131 F.3d 818
 97 Cal. Daily Op. Serv. 9274, 97 Daily Journal
D.A.R. 14,953
A.J. NEAL, Plaintiff-Appellant,
v.
Edwin SHIMODA, Administrator, Correctional Facilities; Guy
Hall, Administrator, Correctional Facilities; Richard
Mello, Case Manager, Halawa Correctional Facility; Barry
Coyne, Administrator, Sex Offender Treatment Program, Halawa
Correctional Facility; John Does 1-10; Doe Entities 1-10;
State of Hawaii, Defendants-Appellees.
Marshall MARTINEZ, Plaintiff-Appellant,
v.
Shelley NOBRIGA, H.C.F., Classification Coordinator; George
Sumner, Dir., Dept. of Public Safety; Edwin Shimoda, Div.
Administrator of H.C.F.; John Smythe, Administrator for
H.C.F., in their individual and official capacities,
Defendants-Appellees.
 Nos. 95-16564, 95-16790.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 11, 1997.
Decided Dec. 11, 1997.
 
 Jeffrey A. Kaiser, Thomas M. Peterson, Cristina Martel Greenway, Lauren M. Michals, and Daniel P. Shenkman, Brobeck, Phleger & Harrison, San Francisco, California, for plaintiffs-appellants.
 Girard D. Lau, Steven S. Michaels, and Margery S. Bronster, Assistant Attorneys General, Honolulu, Hawai'i, for defendants-appellees.
 Appeal from the United States District Court for the District of Hawaii; Alan C. Kay, District Judge, Presiding. D.C. No. CV-94-00817-ACK, D.C. No. CV-93-00692-ACK.
 Before: REINHARDT, T.G. NELSON and HAWKINS, Circuit Judges.
 T.G. NELSON, Circuit Judge:
 
 
 1
 This case involves a state's attempt to classify and treat the sex offenders among its prison population in the hope of decreasing recidivism without violating the U.S. Constitution. A.J. Neal ("Neal") and Marshall Martinez ("Martinez") appeal the district court's orders granting summary judgment to the defendant prison administrators in their separate 42 U.S.C. § 1983 actions. Neal and Martinez allege that Hawaii's Sex Offender Treatment Program ("SOTP"), labeling them sex offenders and compelling their participation in the SOTP as a precondition to their eligibility for parole, violates the Ex Post Facto Clause, violates their due process rights, abridges their privilege against self-incrimination, and constitutes cruel and unusual punishment. We have jurisdiction under 28 U.S.C. § 1291. As to Martinez, we affirm the district court's order in its entirety. As to Neal, we affirm in part and reverse in part.
 
 I.
 A. The Program
 
 2
 In 1992, the Hawaii legislature passed Act 164 ("the Act") authorizing the creation of the SOTP. The Act was premised on the legislature's conclusion that "sexual assault is a heinous crime committed by Offenders with deviant behavior patterns that cannot be controlled by incarceration alone." 1992 Haw. Sess. L. 304-05. The Act recognized that several agencies, including the Hawaii Parole Authority, had begun to coordinate their sex offender oversight functions in 1991.
 
 
 3
 As part of that interagency coordination effort, the Hawaii Parole Authority agreed to identify all sex offenders presently in custody. Under the SOTP, a "sex offender" is defined as someone "having been convicted, at any time, of any sex offense or [who] engaged in sexual misconduct during the course of an offense." Each inmate who is identified as a sex offender must undergo a twenty-five session psychoeducational treatment program in order to become eligible for parole. The SOTP Contract and Consent to Treat form, which must be completed and signed prior to admission to the program, requires the inmate to agree with the following statement: "I admit that I committed the offense(s) charged against me, and I agree to take full responsibility for my sexual behaviors." The contract further informs the inmate that "participation in the [SOTP] is required by the Hawaii Paroling Authority as a pre-condition for parole release." Inmates who are not able to participate in the program because of a lack of space will be considered for parole on a case-by-case basis.
 
 B.A.J. Neal
 
 4
 On June 13, 1990, Neal was indicted for robbery, two counts of kidnapping, three counts of sexual assault in the first degree, terroristic threatening, and attempted murder. Those charges stemmed from a two-day period in which Neal robbed the victim, kidnapped him, and allegedly forced him to perform sexual acts with a juvenile. The indictment further alleged that Neal himself sexually assaulted the victim. He was also indicted for kidnapping a second victim by forcing her into the back of a car where he threatened to kill her. He stole her jewelry and allegedly sexually assaulted her as well.
 
 
 5
 In October 1993, Neal and the State entered into a plea agreement in exchange for the dismissal of the sex offense charges. The plea agreement provided that Neal would serve a twenty-five-year sentence with a six-year minimum term. In December 1994, he was sentenced to a term of six to twenty-five years in prison. Because he was afforded credit for time served, he became eligible for parole on August 5, 1996.
 
 
 6
 Following his assignment to the Department of Public Safety for an initial custody classification and facility placement, he was evaluated under the guidelines set forth in the department's Policies and Procedures Manual, which includes the SOTP's definition of "sex offender." Because Neal's indictment and presentence investigation report included allegations that he had "engaged in sexual misconduct during the course of" his crimes, even though the sexual offenses had been dismissed, he was classified as a "sex offender" and assigned a medium security classification in February 1994. On May 25, 1994, Neal sent a letter to Dr. Barry Coyne, administrator of the SOTP, stating that he was not a convicted sex offender and asking that the "defamatory and degrading" label of sex offender be removed from his classification.
 
 
 7
 In his June 3, 1994, response, Coyne stated that he was authorized by statute "to identify all offenders in ... custody who would benefit from sex offender treatment." He wrote that he and his staff had examined Neal's records and had determined that he would benefit from sex offender treatment. Coyne noted that this determination was "clinical, not judicial," and that participation in the SOTP was voluntary, but that Coyne would "continue to identify [Neal] as a sex offender" and would "continue to recommend" that he receive treatment.
 
 
 8
 Over the next several months, Neal continued to correspond with Coyne, consistently asking that the sex offender label be removed. Shortly before this lawsuit began, Neal was transferred to a minimum security facility, albeit on a different island from the one on which his family lived. Neal has never participated in the SOTP and has refused to sign and complete the SOTP Contract and Consent to Treat form.
 
 C. Marshall Martinez
 
 9
 In 1984, Martinez was convicted of kidnapping and attempted rape stemming from an incident which took place on November 17, 1983. Martinez apparently chose his victim at random, forcing her into an area of bushes where he threatened to rape and kill her. During the confrontation, a passerby came upon the scene, pulled Martinez away from the victim, and helped her escape. According to a report from the Hawaii Department of Corrections, Martinez does not deny the charges. He stated that he attempted the rape with the intention of getting caught because he did not have anything to live for.
 
 
 10
 Martinez was sentenced to a term of eighteen years to life in prison. His sentence was later reduced, making him eligible for parole in November 1998. Prior to this conviction, he had been convicted of rape in 1977 as well as rape and attempted sexual assault in 1979 in Arizona.
 
 
 11
 In 1993, Martinez was classified as a sex offender according to the SOTP criteria. He claims that the "sex offender" label, in addition to affecting his eligibility for parole, also ensures that he can never be transferred to minimum custody status. Like Neal, Martinez has refused to sign and complete the SOTP Contract and Consent to Treat form, and thus has never participated in the SOTP.
 
 D. The Lawsuits
 
 12
 Neal and Martinez each brought separate § 1983 actions against prison officials and administrators of the SOTP on the grounds that labeling them sex offenders based upon a policy enacted after their criminal convictions violated their constitutional rights under the Due Process and Ex Post Facto Clauses of the Fourteenth Amendment. They further allege that by forcing them to admit their guilt to sexual offenses, the SOTP violated their Fifth Amendment privilege against self-incrimination and constituted cruel and unusual punishment in violation of the Eighth Amendment.[1]
 
 
 13
 The district court granted summary judgment to the defendants in both actions. On July 26, 1995, the district court granted summary judgment to the defendants in Martinez's action in an unpublished order. On July 27, 1995, the district court published its summary judgment decision in Neal's action in Neal v. Shimoda, 905 F.Supp. 813 (D.Haw.1995).[2] Because they raise substantially the same issues with regard to Hawaii's SOTP, the two cases were consolidated for purposes of this appeal.
 
 II.
 
 14
 We review the district court's grant of summary judgment de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). We must determine, viewing the evidence in the light most favorable to Neal and Martinez, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id. Constitutional issues are reviewed de novo. United States v. Wunsch, 84 F.3d 1110, 1114 (9th Cir.1996). We also review de novo a district court's conclusions on questions of law and on mixed questions of law and fact that implicate constitutional rights. American-Arab Anti-Discrimination Comm. v. Reno, 70 F.3d 1045, 1066 (9th Cir.1995).
 
 III.
 A. Section 1983 versus Section 2254
 
 15
 Before reaching the merits of the inmates' claims, we must first determine whether § 1983 is the appropriate avenue for relief. The State argues that the inmates' challenge to the SOTP, if successful, would undermine the validity or duration of their confinement and, therefore, must be brought pursuant to 28 U.S.C. § 2254 in a habeas corpus action. We disagree.
 
 
 16
 The State is correct that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." Heck v. Humphrey, 512 U.S. 477, 481, 114 S.Ct. 2364, 2369, 129 L.Ed.2d 383 (1994) (discussing Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)). It is also correct that:
 
 
 17
 [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.
 
 
 18
 Heck, 512 U.S. at 487, 114 S.Ct. at 2372. If the claim alleges a violation of procedural due process rights, the determination of whether the challenge is properly brought under § 1983 must be based on whether "the nature of the challenge to the procedures [is] such as necessarily to imply the invalidity of the judgment." Edwards v. Balisok, --- U.S. ----, ----, 117 S.Ct. 1584, 1587, 137 L.Ed.2d 906 (1997). "If the court concludes that the challenge would necessarily imply the invalidity of the judgment or continuing confinement, then the challenge must be brought as a petition for a writ of habeas corpus, not under § 1983." Butterfield v. Bail, 120 F.3d 1023, 1024 (9th Cir.1997).
 
 
 19
 We have little difficulty distinguishing this case from our recent decision in Butterfield. In Butterfield, we affirmed the district court's dismissal of a prisoner's § 1983 action challenging the parole board's consideration of allegedly false information in Butterfield's prison file in denying him parole. We held that "a challenge to the procedures used in the denial of parole necessarily implicates the validity of the denial of parole and, therefore, the prisoner's continuing confinement." Id. This challenge amounted to a collateral attack on Butterfield's denial of parole and subsequent incarceration, an attack clearly prohibited under Heck and Edwards absent the prisoner's successful pursuit of a writ of habeas corpus.
 
 
 20
 The inmates' challenge in this case does not bear such onerous consequences. If Neal and Martinez are successful in their challenge of the SOTP and their labeling as sex offenders, that decision will not undermine the validity of their convictions or continuing confinement at all. The only benefit that a victory in this case would provide Neal and Martinez, besides the possibility of monetary damages, is a ticket to get in the door of the parole board, thus only making them eligible for parole consideration according to the terms of their sentences. If Neal and Martinez win, it will in no way guarantee parole or necessarily shorten their prison sentences by a single day. The parole board will still have the authority to deny the inmates' requests for parole on the basis of any of the grounds presently available to it in evaluating such a request.[3] A victory in this case would not alter the calculus for the review of parole requests in any way. Because the inmates' challenge in this case does not necessarily imply the invalidity of their convictions or continuing confinement, it is properly brought under § 1983.
 
 B. The Ex Post Facto Claim
 
 21
 We now turn to the inmates' claim that the SOTP violates the Ex Post Facto Clause of the Constitution. The district court concluded that the inmates' ex post facto challenge to the SOTP was not ripe because neither inmate was eligible for parole under the terms of their sentences at the time the challenges were brought. Therefore, neither inmate had suffered any harm by the speculative possibility that he might be denied parole eligibility sometime in the future. Neal and Martinez argue that their ex post facto claim is ripe because the SOTP amounts to "concrete action" by the State that will inevitably prevent them from becoming eligible for parole by their labeling as sex offenders. We agree with the plaintiffs that their ex post facto claim is ripe. However, we conclude, based on the Supreme Court's recent decision in Kansas v. Hendricks, --- U.S. ----, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), that the SOTP does not violate the Ex Post Facto Clause. Therefore, summary judgment for the defendants on this claim was proper.
 
 
 22
 Ripeness is normally a "question of timing. Its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580, 105 S.Ct. 3325, 3332, 87 L.Ed.2d 409 (1985) (citations and quotations omitted). "One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." Id. at 581, 105 S.Ct. at 3332 (quoting Regional Rail Reorganization Act Cases, 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974)). This is not a case that involves "contingent future events that may not occur as anticipated, or indeed may not occur at all." Id. at 580-81, 105 S.Ct. at 3332-33. Pursuant to the SOTP, Neal and Martinez have already been labeled as sex offenders, and it is guaranteed that they will not become eligible for parole if they do not successfully complete the required treatment program and admit their culpability in sexual misconduct.[4]
 
 
 23
 The Supreme Court has also noted that "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration must inform any analysis of ripeness." Id. at 581, 105 S.Ct. at 3332 (quotation and citation omitted). In this case, as in Thomas, "[t]he issue presented ... is purely legal, and will not be clarified by further factual development." Id. Further, "[n]othing would be gained by postponing a decision[.]" Id. at 582, 105 S.Ct. at 3333. Not only do Neal and Martinez have an interest in having their claims resolved on the merits in this appeal, but the State of Hawaii has an interest in learning whether or not its wide-ranging treatment program runs afoul of rights guaranteed by the U.S. Constitution. The inmates' ex post facto claim is ripe for decision.
 
 
 24
 Turning to the merits of the ex post facto claim, we are confronted with a two-pronged inquiry. " '[F]irst, the law must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it.' " Hamilton v. United States, 67 F.3d 761, 764 (9th Cir.1995) (quoting Miller v. Florida, 482 U.S. 423, 430, 107 S.Ct. 2446, 2450, 96 L.Ed.2d 351 (1987)).[5] In terms of disadvantage, the Supreme Court has held that the Ex Post Facto Clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.' " California Dep't of Corrections v. Morales, 514 U.S. 499, 504, 115 S.Ct. 1597, 1600, 131 L.Ed.2d 588 (1995) (quoting Collins v. Youngblood, 497 U.S. 37, 43, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990)). This can be satisfied by a showing that "the new scheme, taken as a whole, is disadvantageous[.]" Nulph v. Faatz, 27 F.3d 451, 455 (9th Cir.1994).[6]
 
 
 25
 The inmates argue that the SOTP, established in 1992, applies retrospectively because inmates are labeled sex offenders for acts that they were accused of committing prior to 1992. The practical consequences which follow from the attachment of that label are that the inmate loses eligibility for furlough or favorable housing, and must complete the SOTP as a precondition to parole eligibility. The inmates argue that these consequences demonstrate that the SOTP, taken as a whole, disadvantages them in violation of the Ex Post Facto Clause. Before the Supreme Court's opinion in Kansas v. Hendricks, --- U.S. ----, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), the inmates' argument had substantial merit. However, in light of Hendricks and our application of its reasoning to the SOTP, we conclude that summary judgment for the defendants on the inmates' ex post facto claim was proper.
 
 
 26
 In Hendricks, the Supreme Court reviewed a Kansas law, the Sexually Violent Predator Act, that provided procedures for the involuntary civil commitment of persons likely to engage in "predatory acts of sexual violence" by declaring them to have a "mental abnormality." Id. at ----, 117 S.Ct. at 2076 (quoting Kan. Stat. Ann. § 59-29a01 et seq. (1994)).[7] The State apparently targeted inmates who were nearing their time of release under the terms of their original sentences and who had been convicted of a sex crime or had been acquitted of or charged with such a crime, but had been found to be incompetent, insane, or possessing a mental disease or defect. After a lengthy formal proceeding, including the targeted individual's option to have a jury trial determine whether the inmate was a "sexually violent predator,"[8] a judge could impose a period of involuntary, indefinite confinement at a treatment facility (often located within a prison) to prevent the inmate's release at the end of his criminal sentence. Id. at ---- - ----, 117 S.Ct. at 2077-78.[9]
 
 
 27
 In a 5-4 decision, the Court held that the program did not violate the Ex Post Facto Clause.[10] In reaching its decision, the Court rejected Hendricks' argument that the Kansas law established criminal proceedings resulting in involuntary confinement that amounted to additional punishment. The Court noted, as a threshold matter, that:
 
 
 28
 [C]ommitment under the Act does not implicate either of the two primary objectives of criminal punishment: retribution or deterrence. The Act's purpose is not retributive because it does not affix culpability for prior criminal conduct. Instead, such conduct is used solely for evidentiary purposes, either to demonstrate that a "mental abnormality" exists or to support a finding a future dangerousness.
 
 
 29
 Id. at ----, 117 S.Ct. at 2082. The Court found significance in the fact that the Act did not require a criminal conviction as a prerequisite for involuntary commitment, concluding that "[a]n absence of the necessary criminal responsibility suggests that the State is not seeking retribution for a past misdeed." Id.
 
 
 30
 After an extended discussion of the nature of civil commitment and the State's intention to treat, rather than punish, the targeted individual, the Court held that "the Act does not establish criminal proceedings and that involuntary confinement pursuant to the Act is not punitive." Id. at ----, 117 S.Ct. at 2085. In summary, the Court explained that:
 
 
 31
 [T]he Act does not impose punishment; thus, its application does not raise ex post facto concerns. Moreover, the Act clearly does not have retroactive effect. Rather, the Act permits involuntary confinement based upon a determination that the person currently both suffers from a "mental abnormality" or "personality disorder" and is likely to pose a future danger to the public. To the extent that past behavior is taken into account, it is used, as noted above, solely for evidentiary purposes. Because the Act does not criminalize conduct legal before its enactment, nor deprive Hendricks of any defense that was available to him at the time of his crimes, the Act does not violate the Ex Post Facto Clause.
 
 
 32
 Id. at ----, 117 S.Ct. at 2086.
 
 
 33
 This reasoning translates wholesale to the ex post facto analysis of the SOTP at issue in this case. If involuntary confinement in a "treatment facility" for an indefinite period of time beyond the inmate's original sentence is not punishment, then it is certainly not punishment to deny an inmate eligibility for parole following his classification as a sex offender so that he can participate in a treatment program. Like the Kansas program, the SOTP authorizes the officials responsible for classifying inmates as sex offenders to take past behavior into account, but only for "evidentiary" purposes related to the classification. The SOTP "does not criminalize conduct legal before its enactment." Id. at ----, 117 S.Ct. at 2086. Prison officials are allowed to consider both conduct for which the inmate was convicted as well as other conduct for which the inmate was either charged, but not convicted, or never charged at all. According to the Supreme Court, this is evidence that the treatment program is intended to be rehabilitative, not retributive. Id. at ----, 117 S.Ct. at 2082. And there can be no serious dispute that the primary, if not the only, reason parole eligibility is denied to inmates like Neal and Martinez is so they can complete the prison's extensive treatment program for sex offenders. Because the Supreme Court has held that such mandatory treatment programs following an inmate's classification as a sex offender based on conduct which occurred prior to the program's beginning do not violate the Ex Post Facto Clause, summary judgment for the defendants on the inmates' ex post facto claim was appropriate.
 
 C. The Due Process Claim
 
 34
 The inmates next claim that the SOTP violates their due process rights. They contend that their classification as sex offenders and their consequential assignment to the SOTP, mandating that they successfully complete the treatment program as a precondition to parole eligibility, implicates a liberty interest subject to the protections of due process, which were not afforded them by the State.[11] Our examination of this claim thus requires us to answer two questions: (1) Is there such a liberty interest? and (2) If so, what process is due?
 
 
 35
 "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 2704, 33 L.Ed.2d 548 (1972). State statutes and prison regulations may grant prisoners liberty interests that invoke due process protections. Meachum v. Fano, 427 U.S. 215, 223-27, 96 S.Ct. 2532, 2537-39, 49 L.Ed.2d 451 (1976). The Supreme Court has held that:
 
 
 36
 [T]hese interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.
 
 
 37
 Sandin v. Conner, 515 U.S. 472, 483, 115 S.Ct. 2293, 2299, 132 L.Ed.2d 418 (1995) (citations omitted). The district court noted and the parties acknowledge that a prisoner does not have a constitutional right to be housed at a particular institution, Meachum, 427 U.S. at 224, 96 S.Ct. at 2537 to receive a particular security classification, Moody v. Daggett, 429 U.S. 78, 87 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976), or to be released on parole, Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).
 
 
 38
 The district court concluded that the SOTP and the Hawaii Parole Authority's policies labeling Neal and Martinez as sex offenders do not create a protected liberty interest. Neal, 905 F.Supp. at 818. In Neal's case, the district court concluded that the "labeling of [Neal] as a sex offender and any resultant impact on [Neal's] custody level or eligibility for parole and furlough do not impose 'atypical or significant hardship' in relation to the ordinary incidents of prison life." Id. We disagree.
 
 
 39
 Our analysis is aided substantially by the Supreme Court's opinion in Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980). In Vitek, inmates challenged a Nebraska statute authorizing correctional officials to classify certain inmates as "mentally ill" without a hearing and transfer them to mental hospitals for involuntary confinement. Id. at 483-86, 100 S.Ct. at 1258-60. The Supreme Court engaged in an extended discussion of the liberty interest implicated by the statute, concluding that it encompassed both the labeling of the inmate as mentally ill and the physical transfer of the inmate to the mental hospital. Id. at 487-88, 100 S.Ct. at 1260-61. The Court first noted that:
 
 
 40
 This objective expectation, firmly fixed in state law and official penal complex practice, that a prisoner would not be transferred unless he suffered from a mental disease or defect that could not be adequately treated in the prison, gave [the inmate] a liberty interest that entitled him to the benefits of appropriate procedures in connection with determining the conditions that warranted his transfer to a mental hospital.
 
 
 41
 Id. at 489-90, 100 S.Ct. at 1261-62 (quotation omitted). The Court thereby made clear that the liberty interest at issue included the procedures used in the classification of the targeted inmate as mentally ill that resulted in the detrimental action which, in Vitek, was the involuntary transfer to a mental hospital.
 
 
 42
 Later in the opinion, the Court summarized its holding:
 
 
 43
 Were an ordinary citizen to be subjected involuntarily to these consequences, it is undeniable that protected liberty interests would be unconstitutionally infringed absent compliance with the procedures required by the Due Process Clause. We conclude that a convicted felon also is entitled to the benefits of procedures appropriate in the circumstances before he is found to have a mental disease and transferred to a mental hospital.
 
 
 44
 Id. at 492-93, 100 S.Ct. at 1263-64 (emphasis added). Finally, the Court concluded that an inmate's criminal conviction and sentence
 
 
 45
 do not authorize the State to classify him as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections.
 
 
 46
 ... [H]ere, the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections.
 
 
 47
 Id. at 494, 100 S.Ct. at 1264 (emphasis added). The liberty interest at stake in Vitek mandated due process protections before both the classification of the inmate as "mentally ill" and his resultant transfer to a mental hospital for involuntary psychiatric treatment.
 
 
 48
 The parallels between Vitek and this case are striking. Hawaii's statute creating the SOTP authorizes correctional officials to classify certain inmates as sex offenders without a hearing and mandates their completion of an extensive treatment program, which includes their confession to past sex offenses, as a precondition to parole eligibility. We can hardly conceive of a state's action bearing more "stigmatizing consequences" than the labeling of a prison inmate as a sex offender.[12] Indeed, when Vitek was decided in 1980, the causes of mental illness were still largely shrouded in mystery, adding to the stigma associated with mental diseases. As extensive medical and scientific research has revealed the growing links between mental illness and chemical imbalances and imperfections in the brain, the historical stigma attached to individuals suffering from mental illness has been somewhat diminished. The same cannot be said of individuals branded as sex offenders. One need only look to the increasingly popular "Megan's laws," whereby states require sex offenders to register with law enforcement officials who are then authorized to release information about the sex offender to the public, to comprehend the stigmatizing consequences of being labeled a sex offender.[13] The classification of an inmate as a sex offender is precisely the type of "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that the Supreme Court held created a protected liberty interest. Sandin, 515 U.S. at 482, 115 S.Ct. at 2300.
 
 
 49
 The State attempts to distinguish Vitek by arguing that the psychiatric treatment in the Nebraska statute was mandatory after the targeted inmate was labeled "mentally ill." Under the technical provisions of the SOTP, the treatment program available to Neal and Martinez is voluntary, and the inmate can quit at any time. However, because the State's regulations render the inmate completely ineligible for parole if the treatment program is not satisfactorily completed, the attachment of the "sex offender" label to the targeted inmate has a practical and inevitable coercive effect on the inmate's conduct. This coercive component of the SOTP is functionally equivalent to the psychiatric treatment required by the statute at issue in Vitek that followed inexorably from the inmate being labeled as mentally ill.
 
 
 50
 There has been some suggestion that the Supreme Court's due process analysis has changed since Vitek and is better represented by Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). It is likely that the analysis contained in Thompson has now been disapproved by the Supreme Court. See Sandin, 515 U.S. at 480, 115 S.Ct. at 2299. We will discuss this approach, however, because our conclusion is sound under this analysis as well and does not require us to draw the type of "negative inferences" discouraged by the Supreme Court in Sandin. Id. In Thompson, the Court discussed an inmate's liberty interest at length, holding that a state creates such an interest by "establishing substantive predicates to govern official decision-making" and "by mandating the outcome to be reached upon a finding that the relevant criteria have been met." Thompson, 490 U.S. at 462, 109 S.Ct. at 1909. The Court also held that:
 
 
 51
 We have also articulated a requirement, implicit in our earlier decisions, that the regulations contain "explicitly mandatory language," i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest.... In sum, the use of "explicitly mandatory language," in connection with the establishment of "specified substantive predicates" to limit discretion, forces a conclusion that the State has created a liberty interest.
 
 
 52
 Id. at 463, 109 S.Ct. at 1909 (citations omitted). In this case, the substantive predicate is the labeling of the targeted inmate as a sex offender. Once that is done, it is mandatory that the labeled inmate successfully complete the specified treatment program in order to become eligible for parole. There is no room for prison officials' discretion once an inmate has been labeled a sex offender.
 
 
 53
 The liberty interest implicated by the establishment of the SOTP is not merely the requirement that sex offenders complete the specified treatment program. If that were all that was at stake, we could probably not say that a liberty interest had been created, given the fact that prisons frequently maintain treatment and behavioral modification programs (such as anger management or alcohol abuse classes) that have long withstood legal challenge. The liberty interest at stake in this case is similar in form and scope to the interest at stake in Vitek: the stigmatizing consequences of the attachment of the "sex offender" label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections. Inmates like Neal and Martinez are entitled to the benefits of these procedures before being labeled as sex offenders and subjected to the requirements of the SOTP.
 
 
 54
 Our identification of a liberty interest implicated in the institution of the SOTP does not, of course, complete the due process analysis. We now must determine what process is due to the targeted inmate and whether Neal and Martinez received that process. "When protected interests are implicated, the right to some kind of prior hearing is paramount.... [A] weighing process has long been a part of any determination of the form of hearing required in particular situations by procedural due process." Roth, 408 U.S. at 569-70, 92 S.Ct. at 2704-05 (footnotes omitted). Neal and Martinez are constitutionally entitled to all of the process due under the standards set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). See Sandin, 515 U.S. at 482, 115 S.Ct. at 2300 ("The time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum."). See also Keenan v. Hall, 83 F.3d 1083 (9th Cir.1996) (embracing this proposition in the context of a prisoner's suit to participate in a hearing to determine his re-classification).
 
 
 55
 In Wolff, the Supreme Court determined that inmates were entitled to procedural due process protections in disciplinary hearings that could result in the forfeiture of an inmate's good-time credits. After holding that such a result implicated a protected liberty interest, the Court turned to the question of what process the inmate was due. At the outset, the Court held that two elements were essential "if the minimum requirements of procedural due process are to be satisfied. These are advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." Wolff, 418 U.S. at 563, 94 S.Ct. at 2978. Under Hawaii's program at issue in this case, the inmate is obviously notified of his classification as a sex offender and the requirement that he complete the SOTP. It is not entirely clear, however, that the inmate is necessarily notified of the reasons for his classification as a sex offender, though it is evident from Neal's case that the reasons will be provided to the inmate if so requested. Due process requires that the inmate be notified of the reasons for his classification as a sex offender without the inmate's having to request that information.
 
 
 56
 Regarding the actual hearing, the Court explained:
 
 
 57
 [T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption.
 
 
 58
 Id. at 566, 94 S.Ct. at 2979. The same protections should be provided to inmates whom the Hawaii Parole Authority intends to classify as sex offenders, except that we do not believe that such a hearing implicates the same safety concerns that were present in Wolff. In a disciplinary hearing, order and safety are serious concerns given that a charge against an inmate for violating a prison's disciplinary rules necessarily implicates behavior in prison. In this case, it is far less likely that the targeted individual's fellow inmates will play such a prominent role in the classification hearing. However, to the extent that other prisoners must be called as witnesses, we agree that due process requires their presence only "when permitting [their appearance] will not be unduly hazardous to institutional safety or correctional goals." Id. Therefore, we hold that an inmate whom the prison intends to classify as a sex offender is entitled to a hearing at which he must be allowed to call witnesses and present documentary evidence in his defense.[14]
 
 
 59
 Against this background, it is clear that Martinez received all of the process to which he was due. Martinez was convicted after formal criminal proceedings of attempted rape, obviously a sex offense. Further, Martinez had been previously convicted of rape in 1977 and rape and attempted sexual assault in 1979. An inmate who has been convicted of a sex crime in a prior adversarial setting, whether as the result of a bench trial, jury trial, or plea agreement, has received the minimum protections required by due process. Prison officials need do no more than notify such an inmate that he has been classified as a sex offender because of his prior conviction for a sex crime. Therefore, summary judgment for the defendants on Martinez's due process claim was appropriate.
 
 
 60
 It is equally clear, however, that Neal did not receive the minimum due process protections required under Wolff. Neal has never been convicted of a sex offense and has never had an opportunity to formally challenge the imposition of the "sex offender" label in an adversarial setting. He must be afforded that opportunity.[15] Contrary to the State's argument, the fact that Neal was indicted for a sex crime does not satisfy due process. Likewise, the fact that Neal wrote letters to the SOTP administrator protesting the label does not begin to satisfy the requirements set forth in Wolff. Because the prison's classification of inmates as sex offenders and the mandatory successful completion of the SOTP as precondition for parole eligibility implicate a protected liberty interest, Neal, as an inmate who has never been convicted of a sex offense, is entitled to the procedural protections outlined by the Supreme Court in Wolff. The State of Hawaii did not afford him those protections. Therefore, the district court incorrectly granted summary judgment to the defendants on Neal's due process claim. To the contrary, the district court should have granted summary judgment to Neal on this claim.[16]
 
 
 61
 Given our conclusion that Neal is entitled to summary judgment on his due process claim, we must determine the remedy to which he is entitled. The district court concluded that the state officials, in their official capacity, are entitled to qualified immunity. Neal, 905 F.Supp. at 823. We agree. State officials sued in their individual capacity are entitled to qualified immunity to the extent that their conduct does not violate clearly established statutory or constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity extends to prison officials. Procunier v. Navarette, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). No reasonable prison official would have reason to know that the classification of Neal as a sex offender or the requirement that Neal complete the SOTP as a precondition to parole eligibility would implicate a protected liberty interest, let alone that the program violated his due process rights. Therefore, Neal is not entitled to damages against the prison officials.[17]
 
 
 62
 Neal is, however, entitled to injunctive relief. On remand, the district court should enter summary judgment for Neal on his due process claim and issue an injunction ordering the Hawaii Parole Authority to remove the "sex offender" label from Neal's classification (and, consequently, the requirement that he complete the SOTP) unless and until he is provided all of the procedural protections due him under Wolff. As soon as the district court issues the injunction, Neal is automatically eligible for parole since all sides agree that under the terms of his sentence, he would have been eligible for parole on August 5, 1996, but for his unconstitutional classification as a sex offender.
 
 D. The Other Claims
 
 63
 Neal and Martinez asserted two other claims in the district court: (1) the SOTP violates their Fifth Amendment privilege against self-incrimination, and (2) requiring the completion of the SOTP as a precondition for parole eligibility violates the Eighth Amendment's prohibition against cruel and unusual punishment. We hold that the district court correctly granted summary judgment to the defendants on both of these claims.
 
 
 64
 1. The Fifth Amendment claim.
 
 
 65
 The inmates claim that the SOTP's Contract and Consent to Treat form violates their Fifth Amendment privilege against self-incrimination because it requires them to admit that they have committed sex offenses. The SOTP requires that "inmates must, at a minimum, not be in denial about their crimes." As part of their participation in the SOTP, targeted inmates must sign the contract, acknowledging their agreement with nine separate points. The first point reads: "I admit that I committed the offense(s) charged against me, and I agree to take full responsibility for my sexual behaviors."
 
 
 66
 Requiring inmates labeled as sex offenders to admit their offenses and take responsibility for their sexual behaviors as part of the treatment program does not violate the inmates' privilege against self-incrimination. The Self-Incrimination Clause of the Fifth Amendment provides that "no person shall be compelled in any criminal proceeding to be a witness against himself." The Supreme Court has recognized that this provision extends not only to criminal proceedings, but any proceeding in which the answers might incriminate the individual in a future criminal proceeding. Allen v. Illinois, 478 U.S. 364, 368, 106 S.Ct. 2988, 2991, 92 L.Ed.2d 296 (1986).
 
 
 67
 The State correctly points out that no admission made by Neal or Martinez could be used against them in a future criminal proceeding. Martinez has already been convicted of the attempted rape and has expressed no intention to collaterally attack the conviction. Double jeopardy considerations would preclude any admission by Martinez regarding the attempted rape from being used against him. For Neal, the terms of his plea agreement dismissing the sex offenses contained in his indictment prohibit the State from prosecuting him in the future for those incidents. Neal has offered no indication that he will ever move to withdraw his plea. Therefore, the possibility of any admission to those sex offenses incriminating him in the future is no more than a remote and speculative possibility, which is insufficient to trigger the Fifth Amendment's protection against self-incrimination. See Zicarelli v. New Jersey, 406 U.S. 472, 478, 92 S.Ct. 1670, 1674, 32 L.Ed.2d 234 (1972).[18] In the absence of any evidence from Neal or Martinez that there is a real probability that the State would use their admissions against them in a future criminal proceeding, the district court correctly granted summary judgment to the defendants on this claim.
 
 
 68
 2. The Eighth Amendment claim.
 
 
 69
 Neal argues that being labeled a sex offender and being forced to participate in the SOTP violates the Eighth Amendment's prohibition against cruel and unusual punishment. The Supreme Court requires the State's conduct to be "so grave that it violates contemporary standards of decency" to constitute such a violation. Helling v. McKinney, 509 U.S. 25, 36, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993). We agree with the district court that the State's program "was designed to identify and treat sex offenders so as to reduce the rate of recidivism among inmates released from the system." Neal, 905 F.Supp. at 820. These are important and laudable goals, and the institution of the program itself was well within the State's authority as part of its operation of correctional facilities. We cannot say that the State's pursuit of these goals or its administration of the SOTP, whether viewed as a whole or as specifically applied to Neal, "violates contemporary standards of decency." Therefore, the district court correctly granted summary judgment to the defendants on this claim.
 
 IV.
 
 70
 We do not intend by this opinion to discourage Hawaii or any other state from the worthwhile attempt to identify and treat the problems possessed by its inmates that contributed to the behavior that resulted in their incarceration. Besides simply punishing offenders, Hawaii has attempted to address the causes of the behavioral deviance exhibited by its inmates in the laudable hope that these criminals will not engage in further criminal activity once they are released from custody. But any correctional treatment program administered by the State must comply with the mandates of the Constitution.
 
 
 71
 After an exhaustive review of the inmates' arguments on appeal, we conclude that the district court correctly granted summary judgment to all of the defendants on the inmates' ex post facto, Fifth Amendment, and Eighth Amendment claims. We therefore AFFIRM the district court's summary judgment orders on those claims. With regard to the due process claim, however, we conclude that the inmates possess a protected liberty interest and that Neal was not provided with the due process protections to which he is entitled under Wolff. Because Martinez has received all of the process to which he is due by virtue of his prior convictions, we AFFIRM the district court's summary judgment order for the defendants in Martinez's case (No. 95-16790) in its entirety. Neal, however, is entitled to summary judgment on his due process claim. We therefore REVERSE the district court's order granting summary judgment to the individual defendants on Neal's due process claim and REMAND Neal's case (No. 95-16564) to the district court for the issuance of an injunction ordering the Hawaii Parole Authority to remove the "sex offender" label from Neal's classification unless and until he is provided with a hearing that guarantees Neal the procedural protections contained in Wolff as enumerated in this opinion. The parties shall bear their respective costs on appeal.
 
 
 72
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART WITH INSTRUCTIONS.
 
 REINHARDT, concurring and dissenting:
 
 73
 I concur in the majority's analysis in all respects except its conclusion that Hawaii's SOTP, as applied to the appellants, does not violate the Ex Post Facto Clause. In reaching its conclusion, the majority relies upon the Supreme Court's recent decision in Kansas v. Hendricks, --- U.S. ----, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). Because I do not think that Hendricks affects plaintiffs' ex post facto claims and because the law aside from Hendricks, including controlling Ninth Circuit precedent, clearly supports their claims, I dissent as to the ex post facto issue and as to the result with respect to Martinez.[1]
 
 
 74
 Deciding whether a state statute violates the Ex Post Facto Clause involves a two-part inquiry. First, we must determine whether the law is retrospective: whether it applies to events that occurred before its enactment. Second, we must determine whether the law would disadvantage the person involved if it were applied to him. Hamilton v. United States, 67 F.3d 761, 764 (9th Cir.1995); United States v. Paskow, 11 F.3d 873, 877 (9th Cir.1993); Chatman v. Marquez, 754 F.2d 1531, 1535 (9th Cir.), cert. denied, 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 101 (1985). Under this two-part test, application of the provisions of the Hawaii Sex Offender Treatment Program to Neal and Martinez as a condition of parole eligibility clearly violates the Ex Post Facto Clause.
 
 
 75
 Both Neal and Martinez were sentenced prior to the adoption of SOTP and are disadvantaged by the substantial delay in parole eligibility that results from its subsequent application to them. We held in Paskow that "the date of eligibility for parole is tantamount to a presumptive release date" and that the state's delay of that date on account of a subsequently enacted provision constitutes an ex post facto violation. Paskow, 11 F.3d at 878. "Because parole eligibility is part of the sentence for the underlying offense, its terms and conditions are fixed at the moment the underlying offense is complete. Therefore, like the length of a term of incarceration, the conditions affecting parole eligibility cannot be retrospectively altered." Id. at 879. Paskow is controlling.
 
 
 76
 Here, the terms and conditions of appellants' eligibility dates were fixed as of the time of their sentencing. Those terms and conditions could not lawfully be changed so as to require them to serve their full sentences without becoming eligible for parole. Id. Yet such was the retrospective and disadvantageous consequence of their refusal to sign consent forms and participate in the Sex Offender Treatment Program. In short, the adoption and application of SOTP adversely affected the appellants' preexisting parole eligibility dates and violated their rights under the Ex Post Facto Clause. Aside from its discussion of Hendricks, the majority offers no analysis or explanation to refute this conclusion.
 
 
 77
 The majority acknowledges that "[b]efore the Supreme Court's opinion in Kansas v. Hendricks, the inmates' argument had substantial merit." (majority opinion 826) (citations omitted). It then relies exclusively on Hendricks in rejecting the ex post facto claims. In doing so, however, the majority fails to recognize two fundamental differences between Hendricks and the case before us-differences that emerge clearly in the majority's own explanation of Kansas's Sexually Violent Predator Act. As the majority states, the Kansas Act establishes procedures for the involuntary civil commitment of individuals who are presently suffering from a mental abnormality, and "are likely to engage in predatory acts of sexual violence." (majority opinion 826, 827). Involuntary civil commitment is designed to treat individuals who the court determines are currently "sexually violent predators," including both those convicted of offenses and those acquitted of crimes of sexual violence by reason of mental illness. Hendricks, --- U.S. at ----, 117 S.Ct. at 2077.
 
 
 78
 Under the Kansas statute what is controlling is the state's determination of the individual's present mental status. That determination involves a lengthy formal proceeding, and the alleged sexual predator is afforded the option of a jury trial, the opportunity to review the state's documentary evidence, and the right to present and cross-examine witnesses. The state has the burden of proving beyond a reasonable doubt that the individual's present condition qualifies him as a "sexually violent predator."[2] By contrast, under Hawaii's SOTP, prison officials select individuals based solely on their past acts, not their current mental or behavioral condition. The SOTP defines a "sex offender" as someone "having been convicted, at any time, of any sex offense or [who] engaged in sexual misconduct during the course of an offense." The SOTP program does not even provide for an inquiry into the inmates' present condition, and the individuals designated for inclusion in the program have no procedural rights in any way similar to those provided under the Kansas statute. Although the administrator of SOTP stated by letter that he identifies all offenders in custody "who would benefit from" treatment, the actual procedures do nothing to determine the current criminal propensities of the inmates before they are classified as sexual offenders, and certainly do not purport to establish those propensities by requiring the authorities to meet any burden of proof. To the contrary, SOTP classifications of persons as "sex offenders" are based solely on the individual's past charged crimes or convictions.
 
 
 79
 The Hendricks Court upheld the Kansas statute against an ex post facto challenge in part because it determined that involuntary civil commitment under the Act "does not impose punishment." Id. at ----, 117 S.Ct. at 2085. The Kansas Act states that "the prognosis for rehabilitating sexually violent predators in a prison setting is poor," and different treatment "modalities" are needed for rehabilitation as compared to punishment. Hendricks, --- U.S. at ----, 117 S.Ct. at 2077. Pursuant to these rehabilitative objectives, the Kansas Act places the individual in a facility designed to provide long-term care and treatment. The Hendricks Court emphasized that the Kansas program "directed that confined persons be segregated from the general prison population" and that it afforded them "the same status as others who have been civilly committed." Id. at ----, 117 S.Ct. at 2085.[3] Despite the majority's argument to the contrary, persons undergoing Hawaii's SOTP are being punished. They are locked up in a penal institution as a part of the general prison population and are treated as prisoners in all respects. The conditions under which SOTP participants are held are thus of an entirely different order than those required by the Kansas Act, and can in no way be considered purely rehabilitative and non-punitive. Moreover, SOTP exacts an additional punishment of extended incarceration in a penal institution by denying the selected prisoners parole eligibility if they are not willing to undergo the program or do not perform satisfactorily. Furthermore, as the majority points out, SOTP has other powerful stigmatizing consequences.
 
 
 80
 Notwithstanding the distinctions so clearly drawn in Hendricks, the majority erroneously equates the denial of parole eligibility-and the extension of a prisoner's presumptive release date and term of service-with an involuntary civil commitment in a non-punitive setting. Nowhere in Hendricks does the Court state or imply that "it is certainly not punishment to deny an inmate eligibility for parole," as the majority opinion asserts. (majority opinion 827). Quite the contrary! In fact, the majority's analysis and conclusion are wholly inconsistent with the rationale of Hendricks as well as in direct conflict with Paskow. The latter decision makes it clear that parole eligibility is part of a prison sentence, and that delaying that eligibility (the presumptive release date) is equivalent to extending the time the prisoner must serve. Thus, I cannot accept the majority's attempt to treat the application of the SOTP requirements in this case as something other than the imposition of additional punishment through continued or additional incarceration.
 
 
 81
 For the reasons I have described above, the Kansas involuntary civil commitment program for current sexual predators is entirely different in its purposes, procedures, and consequences from Hawaii's SOTP. Hendricks provides no support for the majority's conclusion that the indefinite postponement under SOTP of parole eligibility for prisoners sentenced prior to SOTP's adoption is consistent with the Ex Post Facto Clause. Under the law prior to Hendricks, the application of Hawaii's SOTP to previously sentenced prisoners unwilling to participate in SOTP would, as the majority seems to recognize, have violated the Ex Post Facto Clause. If the application of SOTP would have been unconstitutional before Hendricks, it is equally unconstitutional now. In short, the Constitution forbids the retrospective application of laws such as SOTP that would disadvantage previously sentenced criminal defendants.
 
 
 82
 Given the majority's finding of a parallel due process violation in Neal's case, the Ex Post Facto Clause violation apparently does not affect him. Martinez's case is different, however. Martinez will be subject to an unconstitutional extension of his period of incarceration as the result of the application of SOTP. Accordingly, while I concur as to the result in Neal (see n. 1 supra ), I cannot concur in the result with respect to Martinez, and respectfully dissent in his case.
 
 
 
 [1]
 Martinez brought an additional claim of retaliation, alleging that prison officials refused to change his classification to minimum security because he complained about the "sex offender" label. Martinez has abandoned this issue on appeal
 
 
 [2]
 In addition to Neal's claims listed above, the district court also rejected Neal's equal protection challenge, which alleged that he was arbitrarily labeled a sex offender and that the definition of sex offender was overinclusive. The district court reasoned that the SOTP's broad definition of sex offender was rationally related to the state's legitimate interest in rehabilitation. Id. at 819. Neal has abandoned this issue on appeal
 
 
 [3]
 Under Haw.Rev.Stat. § 353-69, the Hawaii Parole Authority has the authority to deny an inmate's request for parole when it has not been shown that "there is a reasonable probability that the prisoner concerned will live and remain at liberty without violating the law and that the prisoner's release is not incompatible with the welfare and safety of society."
 
 
 [4]
 The fact that the SOTP apparently allows for the remote possibility of consideration for parole "on a case by case basis" if the program runs out of space for new participants does not alter this analysis. The explicit language of the SOTP Contract and Consent to Treat form states that participation in the program is "a pre-condition for parole release." This statement does not contemplate a "contingent future event," but, rather, a certainty
 
 
 [5]
 The State is correct that "we have added a third requirement-that the challenged state action be a 'law.' " Nulph v. Faatz, 27 F.3d 451, 455 (9th Cir.1994). However, given our ex post facto jurisprudence that has concluded that " 'laws' is a far broader term than 'statutes,' " id., we have no trouble concluding that Hawaii's SOTP, created by statute, is a law for ex post facto purposes. After all, "[w]e have specifically held that the Ex Post Facto Clause applies to retrospective changes in parole qualifications." Id. (citing Chatman v. Marquez, 754 F.2d 1531, 1535 (9th Cir.1985)). There can be no serious dispute that requiring an inmate who has been labeled a sex offender to complete the SOTP as a precondition to parole eligibility alters the inmate's parole qualifications
 
 
 [6]
 The district court, in its alternative analysis that assumed ripeness, concluded that the SOTP did not violate the Ex Post Facto Clause because it was not disadvantageous, noting, inter alia, that the program was designed to treat sex offenders rather than punish them and that the SOTP furthers the goal of "protecting the public from reoffenses by sex offenders." Neal, 905 F.Supp. at 822
 
 
 [7]
 The Kansas statute defined a "sexually violent predator" as:
 [A]ny person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in the predatory acts of sexual violence.
 Id. at ----, 117 S.Ct. at 2077 (quoting Kan. Stat. Ann. § 59-29a01(1994)) (emphasis added). By its terms, the statute covered individuals who had never been convicted of a crime of sexual misconduct.
 
 
 [8]
 The State must prove its case beyond a reasonable doubt at such a trial, and the inmate "received the right to present and cross-examine witnesses, and the opportunity to review documentary evidence presented by the State." Id. at ---- - ----, 117 S.Ct. at 2077-78 (quoting Kan. Stat. Ann. § 59-29a07 (1994))
 
 
 [9]
 This indefinite confinement could be ended and the individual "permitted immediate release upon a showing that the individual is no longer dangerous or mentally impaired." Id. at ----, 117 S.Ct. at 2085
 
 
 [10]
 Following virtually the same analysis, the Court also held that the program did not violate the Double Jeopardy Clause
 
 
 [11]
 Neal also argues for the first time on appeal that his plea bargain with the State, which contains the State's promise that it will not seek any enhancement or extension of his sentence, creates a protected liberty interest. "As a general rule, this court will not consider an issue raised for the first time on appeal even though it has discretion to do so." Woods v. Saturn Distrib. Corp., 78 F.3d 424, 430 (9th Cir.), cert. dismissed, --- U.S. ----, 117 S.Ct. 30, 135 L.Ed.2d 1123 (1996). We decline to exercise our discretion to reach this issue
 
 
 [12]
 Perhaps being labeled a "child molester" is more stigmatizing than "sex offender." But it should not go unnoticed that child molesters are certainly a subset included in Hawaii's broad definition of "sex offender."
 
 
 [13]
 In fact, we recently upheld one such statute against a challenge that it violated the Ex Post Facto Clause and abridged the labeled individual's rights to privacy and due process. Russell v. Gregoire, 124 F.3d 1079 (9th Cir.1997) (reviewing Washington's version of "Megan's law"). For a well reasoned discussion of Megan's laws, with special emphasis on the New Jersey model, see Kathleen V. Heaphy, Comment, Megan's Law: Protecting the Vulnerable or Unconstitutionally Punishing Sex Offenders?, 7 Seton Hall Const. L.J. 913 (1997)
 
 
 [14]
 We do not here attempt to define the entity which should conduct this hearing, nor do we discuss the appropriate burden of proof or identify the party who should bear it. The Due Process Clause, at a minimum, requires advance notice and an opportunity to be heard. The "play in the joints of the Due Process Clause," id. at 567, 94 S.Ct. at 2979 allows states to flesh out the details defining the limits of such a hearing. We merely hold today that an inmate whom the prison intends to classify as a sex offender is entitled to an advance statement of the reasons for that classification and an opportunity to call witnesses and present evidence to challenge the imposition of that classification
 
 
 [15]
 For contrast, it is interesting to note that in Hendricks, before the inmate was labeled a sexually violent predator, he was entitled to a probable cause hearing, a mental health evaluation, and a full trial "to determine beyond a reasonable doubt whether the individual was a sexually violent predator" where the State bore the burden of proof and the individual had "the right to present and cross-examine witnesses, and the opportunity to review documentary evidence presented by the State." Hendricks, --- U.S. at ---- - ----, 117 S.Ct. at 2077-78. After involuntary confinement, the inmate was allowed three different avenues of review: the committing court was required to conduct an annual review of the case to determine whether continued detention was warranted; the official in charge of commitment could, at any time, decide that the inmate's condition had so changed that release was appropriate; and the confined person could at any time file a release petition. Id. at ----, 117 S.Ct. at 2078
 
 
 [16]
 We have the discretion to order that summary judgment be entered for the non-moving party without the requirement that a cross-motion for summary judgment be filed in that party's favor:
 [I]f one party moves for summary judgment and, at the hearing, it is made to appear from all the records, files, affidavits and documents presented that there is no genuine dispute respecting a material fact essential to the proof of movant's case and that the case cannot be proved if a trial should be held, the court may sua sponte grant summary judgment to the non-moving party.
 Cool Fuel, Inc. v. Connett, 685 F.2d 309, 311 (9th Cir.1982). See also Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In this case, Neal did move for summary judgment and that motion was denied.
 
 
 [17]
 We also agree with the district court that the State of Hawaii is entitled to the protections of sovereign immunity under the Eleventh Amendment. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). The State has not waived this immunity. Therefore, Neal cannot recover damages against the State
 
 
 [18]
 Further, there is no danger that any targeted inmate would be compelled to admit to other sexual misconduct of which prison or law enforcement officials were not already aware. The third point on the Contract and Consent to Treat form states: "I understand that I am not required to provide information about crimes that no one knows about, but if I do so, my therapist is required to report that information to Law Enforcement authorities" (emphasis added). Any admissions regarding other sex crimes would thus be voluntary and thereby would not trigger the protections of the Fifth Amendment
 
 
 [1]
 As I understand it, the majority opinion holds that Neal is entitled to summary judgment on his due process claim, thus providing him with the same relief as he would receive if he were to prevail on his ex post facto claim: specifically, a declaration that he is now eligible for parole. If, however, the majority's decision on his due process claim allows the state to conduct a further hearing that might further postpone the date of his parole eligibility, then his right to be free from ex post facto punishment would be implicated and I would dissent as to Neal as well
 
 
 [2]
 Through the following measures, among others, the Kansas program ensures that it confines only those individuals that presently require treatment and that it does so only so long as their abnormality poses a threat to others: 1) it enables the individual to petition at any time for a reassessment of his needs; 2) it allows for a maximum period of confinement of one year after which a court must determine beyond a reasonable doubt that the individual still qualifies as a sexual predator and requires continued confinement; and 3) it enables the Secretary of Social and Rehabilitation Services to decide at any time that the individual's condition has changed and release him. Hendricks, --- U.S. at ---- - ----, ----, 117 S.Ct. at 2078-81, 2083
 
 
 [3]
 With regard to the conditions of confinement imposed by the Kansas program, the Court stated: "What is significant ... is that Hendricks was placed under the supervision of the Kansas Department of Health and Social and Rehabilitative Services, housed in a unit segregated from the general prison population, and operated not by employees of the Department of Corrections, but by other trained individuals." Hendricks, at ----, 117 S.Ct. at 2085. The Court also noted that the state "declared absolutely that persons under the Act are now receiving in the neighborhood of 31.5 hours of treatment per week." Id. (internal quotations omitted)