**Ronald Gene CHILCOTE, Plaintiff,**

v.

**James MITCHELL and Robert Hood, Defendant.**

**Gary Lee Granger, Plaintiff,**

v.

**Robert A. Hood and James Mitchell, Defendants.**

**Richard Lee Wainwright, Plaintiff,**

v.

**Robert A. Hood and James Mitchell, Defendants.**

**No. CIV. 99–1564–JO.**

United States District Court, D. Oregon.

Oct. 16, 2001.

David M. Jacobson, Dorsey & Whitney, Seattle, WA, for Plaintiff.

Kenneth C. Bauman, Assistant United States Attorney, District of Oregon, United States Attorney's Office, Portland, OR, for Defendants.

## OPINION AND ORDER

ROBERT E. JONES, District Judge.

Plaintiffs Richard Wainwright, Ronald Chilcote, and Gary Granger ("plaintiffs"), former inmates [1] at the Federal Detention Center at Sheridan, Oregon ("FDC Sheridan"), each bring a Bivens[2] action against defendants Robert Hood and James Mitchell of the Bureau of Prisons ("BOP"), alleging violation of their constitutional rights. Although Chilcote and Granger were pretrial detainees and Wainwright was a sentenced inmate, all three assert the same constitutional violations under the Eighth and Fourteenth Amendments of the United States Constitution.[3] This court has jurisdiction over these actions pursuant to 28 U.S.C. §§ 1331 and 1343.

These cases are currently before this court on defendants' motions for summary

---

1. According to the record, plaintiffs no longer are housed or incarcerated at FDC Sheridan.

2. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

3. Only Wainwright can assert an Eighth Amendment violation as a sentenced inmate.

Chilcote and Granger can assert the same violation under the due process clause of the Fourteenth Amendment because "the protection of pretrial detainees from 'punishment' also protects them from the 'cruel and unusual punishments' proscribed by the Eighth Amendment and Fourteenth Amendment." *Martino v. Carey*, 563 F.Supp. 984, 994 (1983)

judgment or alternative motions to dismiss.[4] After considering the parties' arguments and the evidence submitted, I conclude that for the reasons stated below, defendants' motions must be granted.

## FACTS

FDC Sheridan has two sides, Unit J 1 and Unit J 2, which are mirror images of each other. Each unit has 75 cells, 50 of which house two persons and 25 of which house three persons. Pretrial detainees usually are housed in Unit J 2.

Each plaintiff was housed in a three-man cell at some time after March 15, 1999.[5] The cells were designed to house two persons. The cells range in size from 80.65 to 95.96 square feet. Of the 75 cells in Unit J–2, 69 are 83.71 square feet. At least 25 of the Unit J–2 cells house three pretrial detainees. In a triple-bunk cell, 40 to 45 square feet of space is covered by the bunks, sink and toilet. The remaining open floor space is 35 to 40 square feet. That amount of open space effectively does not permit all three cell-mates to be off their bunks at the same time. There are no lockers, chairs or tables in the cells.

Plaintiffs contend that they are held in their cells for 20 to 21 hours per day. It appears that between 8:00 a.m. and 11:00 a.m., Monday through Friday, they are allowed one hour out of their cells for recreation, but not on Saturdays, Sundays, holidays or on rainy days. From 12:00 p.m. to 3:00 p.m. daily, plaintiffs are allowed a second hour out of their cells to shower or watch television. Either between 5:30 p.m. and 7:00 p.m., or between 7:00 p.m. and 8:30 p.m., but not both, plaintiffs are allowed additional time out of their cells to shower, make telephone calls, or watch television. At 8:30 p.m. daily, the cells are locked until the next day.

Plaintiffs contend that the combination of "triple-bunking" together with the extensive lockdown hours results in physical and psychological injury. Cramped conditions cause physical injury: because there are no chairs in the cells, plaintiffs must either sit stooped over on bunks, lie down, or stand up. Cramped conditions combined with the lockdown policy results in psychological injury, which allegedly creates extraordinary stress, extreme despair and depression.

## STANDARD OF REVIEW

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not

*(citing Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).

**4.** The motions are docket no. 60 in *Wainwright v. Hood,* Civil No. 99–1306–JO; docket no. 65 in *Granger v. Hood,* Civil No. 99–1112–JO; and docket no. 42 in *Chilcote v. Hood,* Civil No. 99–1564–JO. Because the issues raised by the motions are substantively similar in all three cases, I will address all mo-

tions in one opinion, which will be filed in each case.

**5.** In mid-March 1999, the former Warden of FCI Sheridan made the decision to add a third bunk to 50 of the cells in Unit J–1 and Unit J–2.

present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge*, 865 F.2d 1539, 1542 (9th Cir.1989).

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material fact issue are resolved against the moving party. *Id.* at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

## DISCUSSION

### I. *Violation of Constitutional Rights*

#### A. *Sentenced Inmate*

■ To prevail on an Eighth Amendment claim, a sentenced inmate like Wainwright must prove a denial of "the minimum civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), resulting from the "deliberate indifference" of prison personnel or officers. *Wilson v. Seiter*, 501 U.S. 294, 302–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). "The deliberate indifference standard requires the plaintiff to prove that 'the official knows of and disregards an excessive risk to inmate health or safety * * *.'" *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citation omitted). "This standard requires that the official be subjectively aware of the risk. The official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

■ Further, proof of a violation of the Eighth Amendment must satisfy a two-prong test, which has both an objective and a subjective component. The objective component requires proof that the deprivation was "sufficiently serious" to form the basis for an Eighth Amendment violation. The subjective component requires proof that the prison official acted "with a sufficiently culpable state of mind." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) *(citing Wilson, supra, 501 U.S. at 298, 111 S.Ct. 2321)*. In *Johnson,* the Ninth Circuit explained that "although the routine discomfort inherent in the prison setting is inadequate to [sustain an Eighth Amendment violation], those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of [such a claim]." *Johnson,* 217 F.3d at 731.

Whether a condition of confinement rises to the level of cruel and unusual punishment will hinge on "evolving contemporary standards of dignity, humanity and decency." *Lareau v. Manson*, 651 F.2d 96, 105 (2nd Cir.1981). The Ninth Circuit has explained that:

> In analyzing claims of Eighth Amendment violations, the courts must look at discrete areas of basic human needs. As we have recently held, "[A]n institution's obligation under the eighth amendment is at an end if it furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety."

*Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir.1982) (citation omitted).

It is well established that "overcrowding in prisons does not per se violate the Constitution." *Rhodes v. Chapman*, 452 U.S. at 347, 101 S.Ct. 2392. Overcrowding can amount to a constitutional violation where the prisons are

horrendously overcrowded, to the point where some inmates were forced to sleep on mattresses spread on the floors in hallways and next to urinals. The physical facilities were dilapidated and filthy, the cells infested with roaches, flies, mosquitos and other vermin. Sanitation facilities were limited and in ill repair, emitting an overpowering odor; in one instance over 200 men were forced to share one toilet.

*Rhodes,* at 452 U.S. at 355–56, 101 S.Ct. 2392 (Brennan, J. concurring)(internal quotations and citations omitted). Thus, a constitutional violation of the Eighth Amendment must be based on the "totality of conditions" at a prison:

> There is no Eighth Amendment violation if each of these basic needs is separately met. If the challenged condition does not deprive inmates of one of the basic Eighth Amendment requirements, it is immune from Eighth Amendment attack. A number of conditions, each of which satisfy Eighth Amendment requirements, cannot in combination amount to an Eighth Amendment violation.

*Hoptowit,* 682 F.2d at 1246–47 *(citing Wright v. Rushen,* 642 F.2d 1129, 1132 (9th Cir.1981)).

Applying this standard, Wainwright has not shown that he has been deprived of "the minimal civilized measure of life's necessity," *i.e.,* he has not been deprived of shelter, food and water, clothes or medical care. Indeed, Wainwright has not alleged any mistreatment apart from cell size and lockdown time. That is insufficient to sustain an Eighth Amendment claim. Consequently, defendants' motion for summary judgment (# 60) is granted.

### B. *Pretrial Detainees*

Two of the three plaintiffs, Chilcote and Granger, were pretrial detainees. Al-

though pretrial detainees also enjoy Eighth Amendment protection from "punishment," their protection is under the due process clause of the Fourteenth Amendment. " 'The Due Process clause protects a pretrial detainee from the use of excessive force that amounts to punishment.' " *Redman v. County of San Diego,* 942 F.2d 1435, 1440 (9th Cir.1991)(*quoting Graham v. Connor,* 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The constitutional standard applicable to a pretrial detainee differs from that applicable to sentenced inmates:

> The constitutional standard by which the legality of conditions of confinement for pretrial detainees is to be measured differs from that applicable in the case of sentenced inmates. For the former group the test is whether the conditions amount to "punishment" without due process in violation of the Fourteenth Amendment.

*Lareau v. Manson,* 651 F.2d 96, 102 (2nd Cir.1981)(emphasis added)(*citing Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).

 Pretrial detainees are protected "from conditions which in fact serve no valid purpose * * * but to inflict misery on them and thereby punish them." *Martino v. Carey,* 563 F.Supp. 984, 994 (D.Or.1983)(*citing Bell v. Wolfish, supra.* at 538–39, 99 S.Ct. 1861). In *Martino,* Judge Redden stated:

> Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmen-

tal action is punishment that may not constitutionally be inflicted upon detainees qua detainees. Courts must be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect this fact rather than a court's idea of how best to operate a facility.

*Martino,* 563 F.Supp. at 984.

According to the government, "triple-bunking" is necessary due to the number of inmates and pretrial detainees entering FDC each year. The government further explains that the extensive lockdown period for pretrial detainees is necessary because the BOP has not evaluated them or determined their security needs and their potential for violence. The conditions of detention thus are related to legitimate goals and are not arbitrary or purposeless. Chilcote[6] and Granger have not alleged any mistreatment other than overcrowding and limited time outside the cell. Without more, these conditions do not rise to the level of a constitutional violation. I therefore grant defendants' motions for summary judgment (##42, 65) on Chilcote's and Granger's claims.

## II. *Qualified Immunity*

■ Defendants also argue that they are entitled to summary judgment on their defense of qualified immunity. I agree.

The qualified immunity doctrine "shield[s] [government agents] from liability for civil damages so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Har-*

low v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The Ninth Circuit has adopted a two-prong analysis for evaluating qualified immunity claims. Under this analysis the court must ask (1) whether the law governing the official's conduct was clearly established, and (2) whether under that law and under the circumstances at issue, a reasonable officer could have believed the conduct was lawful. *Munger v. City of Glasgow Police Dept.,* 227 F.3d 1082, 1086 (9th Cir.2000). Summary judgment based on qualified immunity is proper only if "under the plaintiff's version of the facts, and in light of the clearly established law, a reasonable officer could not have believed his conduct was unlawful." *Schwenk v. Hartford,* 204 F.3d 1187, 1195–96 (9th Cir.2000).

In this case, the question is whether the defendants knew or had reason to know that their actions were unconstitutional. Plaintiffs assert that the evidence supports a finding that the defendants were aware of the prevailing law on overcrowding and detention of inmates and pretrial detainees. The cases plaintiff cite, however, concern a multitude of complaints, such as inadequate medical care and inadequate common area space, not just inadequate cell space and limited time out of the cell as is alleged in this case.

I conclude that the law in regard to this issue was not clearly established and that the defendants had no reason to know that they were allegedly violating the constitutional rights of these plaintiffs. *Neal v. Shimoda,* 131 F.3d 818, 832 (9th Cir.1997)(*citing Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396

---

**6.** Chilcote also contends that he was placed in a three-man cell as discipline related to an incident report. Although the BOP many have used the three-man cell as a form of discipline, Chilcote has not shown that the conditions of his detention amounted to "punishment" without due process. *See Lareau v. Manson,* 651 F.2d 96, 102 (2nd Cir.1981).

(1982)). Consequently, as a matter of law defendants are entitled to qualified immunity.

## CONCLUSION

For the reasons stated in this opinion, I grant defendants' motions for summary judgment in *Wainwright v. Hood,* Civil No. 99–1306–JO (# 60); *Granger v. Hood,* Civil No. 99–1112–JO (# 65); and *Chilcote v. Hood,* Civil No. 99–1564–JO (# 42). All three actions are dismissed and any other pending motions are denied as moot. Strike pretrial conference of February 4, 2002, and jury trial beginning February 12, 2002.