**John D. DOE, Appellant,**

v.

**STATE of Iowa, Appellee.**

No. 04–0290.

Supreme Court of Iowa.

Oct. 6, 2004.

Rehearing Denied Oct. 22, 2004.

---

Linda Del Gallo, State Appellate Defender, and David Arthur Adams, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kristin W. Ensign, Assistant Attorney General, for appellee.

LARSON, Justice.

John Doe has appealed from a district court ruling dismissing his petition for postconviction relief under Iowa Code chapter 822 (2003). We affirm.

## I. *Facts and Prior Proceedings.*

Doe was convicted and sentenced in 1987 for first-degree burglary, Iowa Code §§ 713.1, 713.3 (1985), and third-degree sexual abuse, Iowa Code §§ 709.1(1), 709.4(1). He was sentenced to consecutive prison terms totaling thirty-five years. His expected discharge date is December 29, 2005. In 1998, after Doe's commitment to prison, the Iowa legislature enacted Iowa Code chapter 229A, entitled "Commitment of Sexually Violent Predators" (SVPA), which applies to persons who fit the definition of "Sexually Violent Predator[s]."

It is undisputed that Doe is confined for a "sexually violent offense" because Iowa Code section 229A.2(10)(*a*) defines the term as any act violating Iowa Code chapter 709. A prisoner meeting the definition of a sexually violent predator is subject to possible confinement after termination of his sentence. *See* Iowa Code § 229A.4. Although the SVPA was enacted after Doe's commission of the crimes, we have upheld the constitutionality of that act under an ex post facto challenge. *See In re Detention of Garren,* 620 N.W.2d 275, 283 (Iowa 2000) (holding the SVPA to be civil, not criminal, and therefore not subject to ex post facto attack).

Under the SVPA, a person who is presently confined for a sexually violent crime must be assessed to determine if he is a sexually violent predator, who is defined as

a person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility.

Iowa Code § 229A.2(11). We have defined "mental abnormality" as "an inability to control sexually dangerous behavior," *In re Detention of Ewoldt,* 634 N.W.2d 622, 623 (Iowa 2001), and defined it further as:

"[A] congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to commit sexually violent offenses in a degree that causes the individual serious difficulty in controlling his behavior."

*In re Detention of Barnes,* 658 N.W.2d 98, 101 (Iowa 2003) (quoting *Thomas v. Missouri,* 74 S.W.3d 789, 792 (Mo.2002)).

In Iowa the procedure for determining if a prisoner is subject to the SVPA is detailed in the statute. Under section 229A.3(1), if a confined person appears to

meet the statutory definition of a sexually violent predator, the "agency with jurisdiction" of the person (here, the prison) is to give written notice to the attorney general and a multidisciplinary team no later than ninety days prior to the inmate's anticipated discharge date, so an investigation may be conducted. The multidisciplinary team, under section 229A.3(4), "may include individuals from other state agencies" to review the records of the individual referred to the team by prison officials. Within thirty days of receiving the notice, the team is to assess whether the person meets the definition of a sexually violent predator, Iowa Code § 229A.3(4), and notify the attorney general of its assessment. *Id.* The attorney general is then to appoint a "prosecutor's review committee" to review the person's records and "assist the attorney general in the determination of whether or not the person meets the definition of a sexually violent predator." Iowa Code § 229A.3(5).

The multidisciplinary team referred Doe's case to the attorney general in August 2001, but as of the date Doe filed his postconviction petition on October 17, 2003, the attorney general had not yet acted on the recommendation.

Doe complains that the attorney general's failure to act on the team's recommendation has denied him the right to be considered for early release. He cites no statutory authority to support his argument but instead points to an Iowa Department of Corrections (DOC) policy that, he claims, denies him the right to be considered for release prior to his proposed discharge date. According to Doe, that policy, which was adopted after his offense was committed, increases the penal consequences of his criminal act and, therefore, violates the ex post facto provisions of the United States and Iowa Constitutions. In addition, Doe contends the DOC policy

changes the terms of his sentence and therefore violates constitutional separation-of-powers principles.

The DOC policy was adopted in May 1999 as an intra-agency procedure to be followed when an inmate is considered for treatment as a sexually violent predator. *See* Div. of Insts., State of Iowa Dep't of Corrs., *Evaluation of Sex Offenders for Parole Placement Work Release and OWI*, Policy No. IN–V–47–2 (May 1999). Division V of that policy, entitled "Director's Review Committee Options," states:

> *a.* Cases meeting the criteria for referral to the Multidisciplinary Team will be scheduled by the classification manager for review when the offender has not less than 90 days remaining on their sentence.

> *b.* Cases not meeting the MDT referral criteria may be considered for referral by the Institutional Classification Committee to the Iowa Board of Parole for work release or parole placement.

Doe contends that the implication of these two subparagraphs is that, because he meets the criteria for referral to the multidisciplinary team under subparagraph (*a*), he is automatically excluded from subparagraph (*b*) as a member of "the class of persons eligible for parole or other early release."

We initially question the factual basis for Doe's argument that he has been denied a timely decision on whether he qualifies for consideration for possible work release. Under the statute, prison officials are not required to initiate any inquiry regarding the inmate's classification for SVPA purposes until ninety days prior to the inmate's anticipated discharge date. *See* Iowa Code § 229A.3(1). Because Doe's anticipated discharge date is not until December 29, 2005, the referral of his case to the attorney general was well before the ninety days provided by statute.

Any deprivation of Doe's consideration for early release has therefore been visited upon him by the statute—not the DOC policy. Despite our doubts about the factual predicate for Doe's argument, we address his constitutional challenges.

## II. *The State's Motion to Dismiss.*

■ We first address the State's motion to dismiss, which asserted that Doe's petition failed to state he "has been or will be kept beyond his discharge date." The district court agreed with the State and ruled that Doe's claim for postconviction relief was premature. Doe filed a motion under Iowa Rule of Civil Procedure 1.904(2), asking the court to amend its ruling to address the ex post facto and separation-of-powers violations alleged in his postconviction application. While the district court denied the motion to amend, Doe's motion requesting the court to consider his constitutional issues was sufficient to preserve them for appeal. *See Meier v. Senecaut,* 641 N.W.2d 532, 537 (Iowa 2002) ("When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal.").

## III. *Resolution.*

■ A. *The ripeness argument.* The State argues that, until Doe has been denied an early release, he cannot press his claims on the constitutionality of the DOC policy. However, Doe does not claim a *present* deprivation of release. Rather, he claims that the effect of the DOC rule is to remove him from the class of inmates who may be *considered* for early release. That claim is ripe for our consideration. We disagree with the State and the district court on the ripeness issue.

■ B. *The ex post facto argument.* Doe argues that, as applied to him, the

DOC policy violates the ex post facto clauses of the federal and state constitutions. *See* U.S. Const. art. I, § 10; Iowa Const. art. I, § 21. We have said "[t]he ex post facto clauses of the federal and state constitutions forbid enactment of laws that impose punishment for an act that was not punishable when committed or that increases the quantum of punishment provided for the crime when it was committed." *State v. Pickens,* 558 N.W.2d 396, 397 (Iowa 1997) (citing *Weaver v. Graham,* 450 U.S. 24, 28–29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17, 22 (1981)).

■ Although Doe does not challenge a statute or a formally adopted administrative rule, administrative actions in parole cases may nevertheless implicate ex post facto issues. *See, e.g., Rodriguez v. United States Parole Comm'n,* 594 F.2d 170, 173 (7th Cir.1979) ("What Congress cannot do directly, it cannot do by delegation."). However, not all administrative policies that postdate an inmate's offense run afoul of the Ex Post Facto Clause. For example, in *Garner v. Jones,* 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000), the Supreme Court rejected an ex post facto challenge to a parole rule. In that case, an inmate challenged a parole board's rule, amended after sentencing, that changed the frequency of parole hearings. The inmate contended the change—from three years to eight years between hearings—violated ex post facto principles. Under Georgia law, the state parole board had discretion to set the intervals, up to eight years, between hearings. *Garner,* 529 U.S. at 254, 120 S.Ct. at 1369, 146 L.Ed.2d at 246–47. The Court noted that ex post facto principles are less stringent in cases of parole eligibility than in others:

> [T]o the extent there inheres in *ex post facto* doctrine some idea of actual or constructive notice to the criminal before commission of the offense of the

penalty for the transgression, we can say with some assurance that where parole is concerned discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that [the parole board] has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a *complex of other factors,* will inform parole decisions....

The particular case of respondent well illustrates that the Boards Rule changes are designed for the better exercise of the discretion it had from the outset. *Id.* at 253–55, 120 S.Ct. at 1369–70, 146 L.Ed.2d at 246–47 (citations omitted and emphasis added).

In *Neal v. Shimoda,* 131 F.3d 818 (9th Cir.1997), the court upheld a law postponing parole eligibility for sex offenders. The petitioner had been convicted of attempted rape in 1984 and was to become eligible for parole in 1998. In 1992 Hawaii's legislature enacted a sex-offender treatment statute. Under that statute, sex offenders in custody are required to complete a twenty-five-session psychoeducational treatment program in order to be eligible for parole. *Neal,* 131 F.3d at 821–22. The petitioner challenged the statute on the ground that making program completion a requirement of parole eligibility made the punishment more onerous and therefore violated the Ex Post Facto Clause. *Id.* at 826. The court rejected the argument, reasoning that,

[i]f involuntary confinement in a "treatment facility" for an indefinite period of time beyond the inmate's original sentence is not punishment, then it is certainly not punishment to deny an inmate eligibility for parole following his classi-

fication as a sex offender so that he can participate in a treatment program.

*Id.* at 827. The court continued:

The [sexually violent predator act] "does not criminalize conduct legal before its enactment." Prison officials are allowed to consider both conduct for which the inmate was convicted as well as other conduct for which the inmate was ... never charged at all. According to the Supreme Court, this is evidence that the treatment program is intended to be rehabilitative, not retributive. And there can be no serious dispute that the primary, if not the only, reason parole eligibility is denied to inmates ... is so they can complete the prison's extensive treatment program for sex offenders.

*Id.* (citations omitted). Based on this reasoning, the court held that the program was not punishment, and therefore, retroactive application was not unconstitutional. *Id.*

We conclude that the DOC screening policy is a reasonable and integral prerequisite for the application of our SVPA, and the policy, like the SVPA itself, does not violate the ex post facto doctrine. It is, rather, one of the "complex of ... factors" that justifies retroactive application of the DOC policy. *See Garner,* 529 U.S. at 253, 120 S.Ct. at 1369, 146 L.Ed.2d at 246.

■ C. *Separation-of-powers violation.* The Iowa Constitution provides:

The powers of the government of Iowa shall be divided into three separate departments—the Legislative, the Executive, and the Judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted.

Iowa Const. art. III, § 1. "This principle is violated if one branch of government purports to use powers that are clearly forbidden, or attempts to use powers granted by the constitution to another branch." *State v. Phillips,* 610 N.W.2d 840, 842 (Iowa 2000) (citing *In re C.S.,* 516 N.W.2d 851, 858 (Iowa 1994)).

> Although the distinction between the executive and judicial powers is often unclear, they do differ. The executive department has the general power to execute and carry out the laws; the judicial department has the power to interpret the constitution and laws, apply them, and decide controversies.

*City of Cedar Falls v. Flett,* 330 N.W.2d 251, 254–55 (Iowa 1983).

 Doe argues that the DOC's screening procedure "constitute[s] an attempt by the Executive Branch ... to alter the sentence imposed by the Judicial Branch." Sentencing, of course, is a judicial function. *See State v. Iowa Dist. Ct.,* 616 N.W.2d 575, 578 (Iowa 2000) ("Although the legislature prescribes the punishment for crimes, the actual sentencing of a defendant is an independent function that is the sole province of the judiciary."); *State v. Longo,* 608 N.W.2d 471, 475 (Iowa 2000) ("sentencing is the sole prerogative of the judge"). "Because sentencing falls within the realm of judicial power, any encroachment on this power is a violation of the separation-of-powers doctrine." *Klouda v. Sixth Judicial Dist. Dep't of Corr. Servs.,* 642 N.W.2d 255, 261–62 (Iowa 2002).

Sentencing and parole, however, are different matters. While sentencing " 'relates to judicial action taken before the prison door is closed,' " *see id.* at 262 (quoting *State v. Wright,* 202 N.W.2d 72, 76 (Iowa 1972)) (emphasis omitted), the "parole system is solely a creature of the legislature." *Phillips,* 610 N.W.2d at 842

(finding that the legislature has the power to limit or even preclude parole for persons found guilty of certain crimes). Through the act of delegation, parole decisions are typically made by "executive or administrative action taken after the door has been closed on the convict." *Klouda,* 642 N.W.2d at 262 (citations omitted); *see* Iowa Code § 906.3 (1986) (vesting the power to determine if prisoners qualify for early release in the board of parole, an executive agency). Thus, in Iowa, most parole decisions are legitimately within the discretion of the executive branch.

The DOC screening policy does not purport to deal with the length of an inmate's sentence; it simply establishes a procedure for determining the inmate's status vis-à-vis the SVPA. The policy does not in any sense usurp the sentencing authority of the court and does not violate the Separation of Powers Clause. We affirm on this issue as well.

**AFFIRMED.**