Stanley TAYLOR, Applicant–Appellant,

v.

STATE of Iowa, Respondent–Appellee.

No. 07–0626.

Court of Appeals of Iowa.

Feb. 13, 2008.

Mark C. Smith, State Appellate Defender, and Dennis D. Hendrickson, Assistant State Appellate Defender, for appellant.

Stanley Taylor, Anamosa, pro se.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, John P. Sarcone, Polk County Attorney, and Nan Horvat, Assistant County Attorney, for appellee.

Considered by SACKETT, C.J., and VOGEL and VAITHESWARAN, JJ.

SACKETT, C.J.

Postconviction relief applicant, Stanley Taylor, appeals the district court's dismissal of his petition. Taylor contends the department of corrections has retroactively applied changes in parole review procedures contained in Iowa Code section 906.5 (1995). He argues the retroactive application of these changes to his case violates the ex post facto clauses of the United States and Iowa constitutions. The district court dismissed his petition, finding Taylor failed to prove that the rule change created a significant risk of an increased term of incarceration. We affirm.

## I. BACKGROUND.

Taylor was charged on March 24, 1994 with committing sexual abuse in the second degree, a class B felony, in violation of Iowa Code section 709.3 (1993), and engaging in lascivious acts with a child in violation of section 709.8. Taylor was convicted of these offenses on December 5, 1995. He was sentenced to serve twenty-five years in prison for the sexual abuse conviction and five years for the lascivious acts

with a child conviction. The sentences were ordered to run consecutively. Taylor has been serving out his sentence since December 21, 1995.

When Taylor committed the offenses in 1994, the Iowa Code required the parole board to conduct annual personal interviews with many classes of prisoners as part of the parole review process. The code in effect at the time of Taylor's offenses provided in part:

[W]ithin one year after the commitment of a person other than a class "A" felon, class "B" felon convicted of murder in the second degree and serving a sentence of more than twenty-five years, or a felon serving a mandatory minimum sentence, other than a class "A" felon, to the custody of the director of the Iowa department of corrections, a member of the board *shall interview the person.* Thereafter, at regular intervals, not to exceed one year, the board shall interview the person and consider the person's prospects for parole or work release.

Iowa Code § 906.5(1) (1993). Under this statute, all inmates were entitled to annual personal interviews except for class A felons, class B felons convicted of second-degree murder, and other felons serving a mandatory minimum sentence.[1] In 1995 this section was amended to require case file reviews instead of personal interviews and to further exempt some felons from the annual parole review process. The amended statute states,

The board at least annually *shall review the status* of a person other than a class

---

1. A person serving a sentence for sexual abuse in the second degree is subject to a mandatory minimum sentence. This person is not eligible for parole or work release until he "has served seven-tenths of the maximum term of the person's sentence." Iowa Code § 902.12(3). However, this mandatory mini-

mum sentence does not apply to Taylor because it was enacted in 1996, after Taylor committed the offenses. Thus, Taylor is not excluded from the parole review procedures as a felon serving a mandatory minimum sentence.

"A" felon, *a class "B" felon serving a sentence of more than twenty-five years,* or a felon serving a mandatory minimum sentence other than a class "A" felon, and provide the person with notice of the board's parole or work release decision. Iowa Code § 906.5(1) (1995). The amended version requires the board to annually review an inmate's status rather than conduct individual interviews with inmates each year. It also enlarges the class of inmates exempt from the review process by excluding any class B felon serving a sentence over twenty-five years rather than excluding only those convicted of second-degree murder.[2]

Taylor was not given a case file review or a personal interview during the first two years of his incarceration. Starting in 1998, the parole board has provided annual status reviews of Taylor by considering his case file but has never interviewed him.

Taylor filed a pro se application for postconviction relief on November 18, 2005, and in February 2006 he was appointed counsel. Taylor and his attorney argued that Taylor is entitled to annual personal interviews with the parole board as the code provided at the time the offenses were committed. Taylor urged that retroactive application of the code change that only requires a case file review enhances the punishment for the crimes he committed and therefore violates the ex post facto clauses of the United States and Iowa constitutions.

The parties waived trial, stipulated to the facts, and submitted the issue to the court. The court denied the application on the ground that Taylor failed to meet his burden of proving that there was a significant risk of Taylor being incarcerated longer due to the elimination of the annual personal interview in the parole review process. Taylor appeals.

## II. STANDARD OF REVIEW.

▇▇▇ Postconviction relief proceedings are reviewed for correction of errors at law. *De Voss v. State,* 648 N.W.2d 56, 60 (Iowa 2002). However, Taylor's claim that the application of the changed parole review procedures to his case violates ex post facto principles is constitutional in nature. Our review of these claims is de novo. *State v. Corwin,* 616 N.W.2d 600, 601 (Iowa 2000). Under this review, "we must make an 'independent evaluation of the totality of the circumstances as shown by the entire record.'" *State v. Kinkead,* 570 N.W.2d 97, 99 (Iowa 1997) (quoting *State v. Cook,* 530 N.W.2d 728, 731 (Iowa 1995)).

## III. RETROACTIVE APPLICATION OF AMENDED SECTION 906.5.

▇▇▇ The United States and Iowa constitutions prohibit the enactment of ex post facto laws. U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . pass any . . . ex post facto Law."); Iowa Const. art. I, § 21 ("No . . . ex post facto law . . . shall ever be passed."). The ex post facto clauses " 'forbid the application of a new punitive measure to conduct already committed.'" *State v. Seering,* 701 N.W.2d 655, 666 (Iowa 2005) (quoting *Schreiber v. State,* 666 N.W.2d 127, 129 (Iowa 2003)). A violation may occur " 'when a statute makes more burdensome the punishment for a crime after its commission.'" *Id.* (quoting

---

2. The district court found Taylor is also not exempt from parole review under the amended statute because he is not currently serving a sentence of *"more* than twenty-five years." The court determined he is currently serving a twenty-five year sentence and will later serve the five-year sentence for his conviction of lascivious acts with a child. The parties have not challenged this finding on appeal.

*Schreiber,* 666 N.W.2d at 129). Administration of the parole review process can implicate the prohibitions against ex post facto laws. *Doe v. State,* 688 N.W.2d 265, 269 (Iowa 2004) (citing *Rodriguez v. United States Parole Comm'n,* 594 F.2d 170, 173 (7th Cir.1979)). The ex post facto principles are less strictly applied in parole eligibility cases however because the parole board must be able to exercise broad discretion in its parole decisions and adjust its procedures according to insights about the risk of recidivism. *Id.* at 269–70 (citing *Garner v. Jones,* 529 U.S. 244, 253–55, 120 S.Ct. 1362, 1369–70, 146 L.Ed.2d 236, 246–47 (2000)).

 The ex post facto clause does not require that an inmate's "sentence be carried out under the identical legal regime that previously prevailed" when the offense was committed. *California Dep't of Corr. v. Morales,* 514 U.S. 499, 510 n. 6, 115 S.Ct. 1597, 1603, n. 6, 131 L.Ed.2d 588, 597, n. 6 (1995). The question is whether retroactive application of an amended law "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 509, 115 S.Ct. at 1603, 131 L.Ed.2d at 597. If the amendment does not show a significant risk of increased incarceration by its terms, "the [inmate] must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion that its retroactive application will result in a longer period of incarceration than under the earlier rule." *Garner,* 529 U.S. at 255, 120 S.Ct. at 1371, 146 L.Ed.2d at 247. "[T]he question of what legislative adjustments 'will be held to be of sufficient moment to transgress the constitutional prohibition' *must* be a matter of 'degree.'" *Morales,* 514 U.S. at 509, 115 S.Ct. at 1603, 131 L.Ed.2d at 597 (quoting *Beazell v. Ohio,* 269 U.S. 167, 171, 46 S.Ct. 68, 69, 70 L.Ed.

216, 218 (1925)). The party challenging the statute need not prove that his actual term of imprisonment would have been less under previous law, but he must show that "the measure of punishment itself has changed" by application of the amended law. *Id.* at 510 n. 6, 115 S.Ct. at 1603, n. 6, 131 L.Ed.2d at 597, n. 6.

 A sufficient risk of increased punishment cannot be proved by conjecture or by attacking insignificant procedural changes in the parole system. An amendment does not violate the ex post facto clause if it "creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes." *Id.* at 509–510, 115 S.Ct. at 1603, 131 L.Ed.2d at 597. Also, "not every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited." *Garner,* 529 U.S. at 250, 120 S.Ct. at 1367, 146 L.Ed.2d at 244. In *Morales,* the United States Supreme Court found the retroactive application of a statute that empowered the parole board to reduce the frequency of parole hearings did not violate the ex post facto clause. *Morales,* 514 U.S. at 514, 115 S.Ct. at 1605, 131 L.Ed.2d at 599; *see also Garner,* 529 U.S. at 255–56, 120 S.Ct. at 1370–71, 146 L.Ed.2d at 247–48 (analyzing a similar statute). The court rejected the ex post facto challenge because the amendment only created a speculative possibility, rather than a sufficient risk, of longer incarceration and the board retained discretion to increase the frequency of parole hearings based on the specific circumstances of inmates. *Morales,* 514 U.S. at 509–512, 115 S.Ct. at 1603–04, 131 L.Ed.2d at 597–98.

By contrast, changes in the parole system that deprive an inmate of all opportunity for early release or that retroactively modify the formula for an inmate to earn a

reduced sentence have been held to violate the ex post facto prohibition. *See Weaver v. Graham,* 450 U.S. 24, 33, 101 S.Ct. 960, 966–67, 67 L.Ed.2d 17, 26 (1981); *Lindsey v. Washington,* 301 U.S. 397, 400–01, 57 S.Ct. 797, 798–99, 81 L.Ed. 1182, 1185–86 (1937). For example, in *Lindsey,* at the time of the offenses, the maximum term for imprisonment for the crime was fifteen years but the statute was amended prior to the defendant's sentencing to make fifteen years of imprisonment mandatory. *Lindsey,* 301 U.S. at 398–99, 57 S.Ct. at 797–98, 81 L.Ed. at 1185. The court deemed the retroactive abolition of the court's discretion to provide a lesser term of incarceration violated the ex post facto clause. *Id.* at 400–02, 57 S.Ct. at 798–99, 81 L.Ed. at 1185–86. In *Weaver,* a state retroactively modified a system that allowed inmates to earn credits toward early release. *Weaver,* 450 U.S. at 25–26, 101 S.Ct. at 962–63, 67 L.Ed.2d at 20–21. The amendment reduced the amount of time an inmate could earn through good conduct toward his sentence. *Id.* at 25–26, 101 S.Ct. at 962–63, 67 L.Ed.2d at 20–21. The court held that the retroactive application of the amendment was unconstitutional because on its face, the amendment created a significant risk of prolonged incarceration. *Id.* at 33–34, 101 S.Ct. at 966–67, 67 L.Ed.2d at 25–26. By its terms, it prevented an inmate from reducing his sentence to the same extent as was possible prior to the amendment. *Id.* at 33–34, 101 S.Ct. at 966–67, 67 L.Ed.2d at 25–26.

 Taylor and his counsel argue the change in Iowa law from conducting yearly personal interviews to only reviewing an inmate's case file each year produces a serious risk of increasing the measure of punishment attached to an inmate's crime. Taylor cites the Iowa Parole Board's annual report for statistics showing that those who receive personal interviews are more likely to granted parole than those who only receive a case file review. Taylor further asserts the board has a policy of prolonging incarceration for class B felons because the board's annual report states that "there are certain types of offenders from whom the public must be protected as long as possible." Taylor argues that the unlimited discretion of the board to grant or deny personal interviews effectively results in a longer period of incarceration.

The State argues that the amendment does not create a sufficient risk of prolonged incarceration because even though Taylor has not received an interview, he still receives annual consideration for parole through a case file review. The State notes that since Taylor was convicted of a serious crime and received a lengthy sentence, his chance of parole is remote. It further asserts that under the administrative rules implementing section 906.5, the board is not required to interview inmates but can exercise its discretion to grant personal interviews. Iowa Admin. Code § 205–8.6. The State emphasizes that the board denied parole thus far due to the serious nature of his crime and because Taylor had not completed his treatment or a sexual predator assessment. The board's 2006 evaluation stated that parole will be reconsidered if Taylor completes treatment and if the department of corrections approves him for parole.

The district court acknowledged that the annual report statistics show that inmates that receive interviews are more likely to be granted parole or work release. In 2004, forty-nine percent of inmates interviewed received parole or work release while only forty-two percent of case file reviewed inmates received parole or work release privileges. In 2005, forty-three percent of interviewed inmates and thirty-five percent of case file reviewed inmates

were granted parole or work release. The court correctly pointed out that despite the increased likelihood of receiving parole or work release through the interview procedure, the statistics fail to show how this affects the length of an inmate's incarceration. This lack of proof, the court found, coupled with the board's discretion to grant interviews in any given case, made Taylor's ex post facto claim speculative.

We agree with the district court's analysis. The amendment does not extend the length of incarceration on its face. Thus Taylor must show that imprisonment is prolonged by the statute's effect. Taylor has not provided statistics comparing the length of incarceration of interviewed Class B felons with the length of incarceration of Class B felons who only receive case file reviews. Although this comparison would be probative of whether the rule change results in increased incarceration, it still would not necessarily be conclusive given the various factors the parole board considers in its review of each case and its ability to exercise discretion according to the circumstances of each inmate. Given the numerous factors a board considers in reaching a parole decision and in deciding whether to conduct a personal interview or case file review of inmates, we cannot infer from the statistics provided that those who receive only case file reviews are at a significant risk of serving longer periods of incarceration. Also significant is how the amendment may increase the board's efficiency while maintaining its discretion to grant personal interviews in any case.

The policy enables the Board to put its resources to better use, to ensure that those prisoners who should receive parole come to its attention. By concentrating its efforts on those cases identified as having a good possibility of early release, the Board's Rules might result in the release of some prisoners earlier than would have been the case otherwise.

*Garner*, 529 U.S. at 254, 120 S.Ct. at 1370, 146 L.Ed.2d at 247. By reducing the amount of personal interviews required, the board is allowed to spend more time reviewing inmates who are immediately prepared for parole or those with exceptional circumstances. Taylor has failed to prove that receiving annual case file reviews instead of personal interviews creates a sufficient risk of serving a longer term of incarceration. We find no violation of the federal or state constitutional ex post facto prohibitions and affirm.

**AFFIRMED.**