# IN THE COURT OF APPEALS OF IOWA

No. 20-1428
Filed November 23, 2021

IN RE THE DETENTION OF ADAM MAURO,

**ADAM MAURO,**
Respondent-Appellant,

_____

Appeal from the Iowa District Court for Warren County, Randy V. Hefner, Judge.

Adam Mauro appeals the district court's denial of his requests for placement in the transitional release program for sex offenders and release with supervision. **AFFIRMED.**

Jill Eimermann, Assistant Public Defender, Special Defense Unit, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee State.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**VAITHESWARAN, Judge.**

Adam Mauro was civilly committed to a unit for sexual offenders. *See In re Det. of Mauro*, No. 07-1704, 2009 WL 398503, at *1 (Iowa Ct. App. Feb. 19, 2009); *see also* Iowa Code §§ 229A.3(1), 229A.4(1), 229A.7(5) (2019). He underwent annual examinations, as required by statute. *See* Iowa Code § 229A.8. Mauro requested hearings in connection with his 2019 and 2020 annual evaluations. A consolidated hearing was held on both. The district court determined "beyond a reasonable doubt Mauro's mental abnormality remain[ed] such that he [was] likely to engage in predatory acts that constitute[d] a sexually violent offense if discharged" and "all of the conditions identified in section 229A.8A(2) for placement in [the civil commitment unit's] transitional release program [were] not [] satisfied." *See id.* § 229A.8(6)(d)(1), (2).

On appeal, Mauro argues (1) "the State did not prove beyond a reasonable doubt that [he] was not suitable for placement in the transitional release program"; (2) "Iowa law permit[s] an individual placed in the transitional release program to reside at a location outside of the civil commitment unit for sex offenders in Cherokee, Iowa"; and (3) "the evidence was insufficient to find that [he] continue[d] to suffer from a mental abnormality and that he remain[ed] likely to commit a sexually violent offense if released with supervision."

## I.     *Sufficiency of the Evidence—Ineligibility for Transitional Release*

The State has the burden of proving beyond a reasonable doubt that "[t]he committed person is not suitable for placement in a transitional release program pursuant to section 229A.8A." *Id.* § 229A.8(6)(d). Section 229A.8A, in turn, states:

2. A committed person is suitable for placement in the transitional release program if the court finds that all of the following apply:

a. The committed person's mental abnormality is no longer such that the person is a high risk to reoffend.

b. The committed person has achieved and demonstrated significant insights into the person's sex offending cycle.

c. The committed person has accepted responsibility for past behavior and understands the impact sexually violent crimes have upon a victim.

d. A detailed relapse prevention plan has been developed and accepted by the treatment provider which is appropriate for the committed person's mental abnormality and sex offending history.

e. No major discipline reports have been issued for the committed person for a period of six months.

f. The committed person is not likely to escape or attempt to escape custody pursuant to section 229A.5B.

g. The committed person is not likely to engage in predatory acts constituting sexually violent offenses while in the program.

h. The placement is in the best interest of the committed person.

i. The committed person has demonstrated a willingness to agree to and abide by all rules of the program.

. . . .

4. A committed person who refuses to register as a sex offender is not eligible for placement in a transitional release program.[1]

Mauro acknowledges "the State meets its burden if it proves at least one [of these conditions] does not exist." He also acknowledges "[a] detailed relapse prevention plan" was not developed and accepted as required by section 229A.8A(d), establishing one of the criteria for ineligibility in the program.[2] Our opinion could

---

[1] *See Taft v. Iowa Dist. Ct. for Linn Cnty.*, 879 N.W.2d 634, 637 (Iowa 2016) ("A different subsection adds a tenth condition requiring committed persons to agree to register as a sex offender to be eligible for placement in the transitional release program.").

[2] Mauro argues the rule prescribing a relapse prevention plan at phase IV of the several phases of treatment was "arbitrary." The department of human services does not appear to have promulgated a rule governing the phases of treatment at the civil commitment unit. *See* Iowa Admin. Code r. 441–31; *Swanson v. Civ. Commitment Unit for Sex Offenders*, 737 N.W.2d 300, 302 (Iowa 2007) ("The Iowa legislature amended chapter 229A in 2002 directing [the department of human

end with these concessions. We elect to proceed to Mauro's argument that the State expert's "criticisms" of him are not "supported by science as she offered no scientific or medical correlation to connect her specific concerns to [his] risk to sexually reoffend."

Dr. Anna Salter interviewed Mauro for "3 hours and 20 minutes." She noted that "[Mauro] has been in [the civil commitment unit] since 2007 and has been unable to change or subdue his sexual arousal to male prepubescent children, including boys under 5." She cited a report of Mauro's therapist stating "his deviant arousal to children remains so strong that he had only to walk in a restaurant on his second community outing before becoming instantly aroused by a prepubescent boy." She continued, "[O]n three different occasions in the last few years, he has gone on supervised outings to restaurants and become sexually attracted to children. Apparently, he has only to see a boy of a certain age in person in order to become sexually preoccupied with that child." After describing the various phases of treatment at the civil commitment unit,[3] she noted that Mauro was twice placed in the highest treatment phase "but was revoked each time." She summarized two tests given to Mauro periodically throughout his commitment and

services] to 'adopt rules pursuant to chapter 17A necessary to administer this chapter.'" Iowa Code § 229A.15B (2003). Currently, [the department] has not promulgated any rules. Instead, [the civil commitment unit] developed a 'Patient Handbook and Orientation Manual.' . . . The handbook explains the five phases of the program."). There is no indication Mauro challenged the handbook provisions as "arbitrary."

[3] Dr. Salter stated, "The phases are as follows: 1 Treatment Engagement/Interfering Factors[;] 2 Identification of Dynamic Risk Factors/Long Term Vulnerabilities[;] 3 Specific Interventions for Dynamic Risk Factors/Long Term Vulnerabilities[;] 4 Maintenance of Change[;] 5 Transitional Release."

stated "every" one of the results "documented a deviant arousal to children."

Dr. Salter opined:

> [Mauro's] deviant arousal pattern, unchanged by his cognitive homework assignments and almost 20 years in secure settings, is a threat to his future and to the safety of young boys who cross his path. He is not helped by his narcissism, as it interferes with his recognizing that his only path to a good future is to use every tool that he can find to diminish his deviant arousal. His problem is . . . the extent to which his sexual attraction to male children puts him at risk for future offenses.

Mauro responds to Dr. Salter's report by reiterating that his undisputed pedophilia diagnosis is not sufficient to establish a risk or reoffending. Dr. Salter addressed this assertion at the hearing. She stated, "you can reduce your attraction to kids. Many people have through behavioral reconditioning, through medication, or through the application of appropriate interventions . . . . You can learn to control it." She opined Mauro was "definitely not ready . . . for either the transitional release program or discharge." When asked whether Mauro had "achieved and demonstrated significant insights into his sex offending cycle," she responded:

> No. Not at all. . . . [H]e should be looking at the main fact which is he had been revoked twice because he couldn't control, because he got so aroused by seeing a kid in a . . . restaurant. He doesn't see that.
> . . . . [H]e's still defending writing 50 stories about children. He's still defending his sexual preoccupation with children. He's a smart man, and . . . I think his sexual preoccupation, attraction to boys, particularly, is distorting his thinking.
> I think he's capable of insight, I just don't think he has it yet.[4]

---

[4] Mauro takes issue with the State's reliance on a story found on his flash drive. He asserts that he passed a polygraph test indicating he did not write the story. But his expert conceded he saw other stories in Mauro's fiction folder that were about children in his victims' age range. We find sufficient evidence to affirm the district court's determination of Mauro's ineligibility for transitional release without consideration of the story Mauro claims not to have authored.

She opined Mauro would likely engage in predatory acts of sexual violence while in the transitional release program, reasoning:

> His feeding the sexual preoccupation, his lack of insight into a sexual preoccupation, his resentments, his externalization of blame, failure to take responsibility for his behaviors, still thinks he shouldn't have been revoked, all of these things mean that he just does not have the skills to be successful in transition.
> Transition gets to the point where you are on your own. You're not sitting in a restaurant with staff, you're sitting in a restaurant by yourself. And he attempted to make eye contact with a child with staff sitting next to him and thought. That does not suggest that he would be safe without staff, which is the goal of the [transitional release program].

Mauro's expert witness testified differently, stating he did not think Mauro was "at high risk to re-offend." At the same time, he did not recommend discharge from the program. In his words,

> [W]hat I recommend is not total confinement in a secure facility because there is, transition is not considered total confinement, even though they spend the night there but during the day they're getting out, so it's a, that's what my recommendation is.

The district court was free to credit Dr. Salter's opinions over those of Mauro's expert. *See In re Det. of Shaffer*, No. 19-1310, 2021 WL 616138, at *2 (Iowa Ct. App. Feb. 17, 2021) (citing *State v. Jacobs*, 607 N.W.2d 679, 685 (Iowa 2000)).

We find sufficient evidence to support the district court's determination that Mauro was ineligible for placement in the transitional release program. The court did not err in approving the 2020 report filed by Dr. Salter. *In re Det. of Betsworth*, 711 N.W.2d 280, 286 (Iowa 2006) (setting forth standard of review.).

The same cannot be said of the report and recommendation filed on October 4, 2019. "A report of the results of each annual examination must be submitted to the court that ordered the committed person's commitment." *Taft v.*

*Iowa Dist. Ct.*, 828 N.W.2d 309, 313 (Iowa 2013) (citing Iowa Code § 229A.8(3)). The 2019 report was not included in our record, and the person who authored the report did not testify at the hearing. Because we have nothing to review, we cannot determine the sufficiency of the evidence supporting the State's 2019 recommendation.

That said, the issue of whether Mauro should have qualified for the transitional release program in 2019 is now moot because we cannot change the past. *Cf. In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) (finding challenge to ex parte removal order moot because "[a]ny error committed in granting the temporary ex parte order cannot now be remedied" and stating, "We cannot go back in time and restore custody based on alleged errors in the initial removal order"); *In re Det. of Taft*, No. 18-2168, 2020 WL 1049850, at *1 (Iowa Ct. App. Mar. 4, 2020) (concluding a respondent's placement in transitional release following filing of notice of appeal did not moot the appeal because his challenge to the burden of proof might require reconsideration of his entire commitment); *In re Hutchcroft*, No. 15-1489, 2017 WL 108288, at *1 (Iowa Ct. App. Jan. 11, 2017) (concluding appeal was not moot based on district court's placement of respondent in a transitional release program where the respondent argued if there were grounds for transitional release there were necessarily grounds for discharge).

## II. *Residence Outside Civil Commitment Unit*

Mauro wished to be placed in a transitional release program in Des Moines instead of the transitional release program at the civil commitment unit. But, as discussed he was found ineligible for transitional release. Accordingly, his request for placement elsewhere is premature. *See State v. Tripp*, 776 N.W.2d 855, 859

(Iowa 2010) (concluding challenge to lifetime parole was not ripe for review where defendant was on probation); *cf. Doe v. State*, 688 N.W.2d 265, 269 (Iowa 2004) (concluding defendant who was not claiming present deprivation of right to release but claimed "that the effect of [a department of corrections] rule [was] to remove him from the class of inmates who may be considered for early release" had a ripe claim).

### III. *Sufficiency of the Evidence—Discharge, Release with Supervision*

Mauro appears to challenge the sufficiency of the evidence supporting the district court's determination that he was ineligible for discharge. *See* Iowa Code § 229A.8(6)(d)(1). As noted, Dr. Salter recommended against discharge, as did Mauro's expert. The record contains sufficient evidence to support the determination.

Mauro also cites Iowa Code section 229A.9A(1)(b) for the proposition that the district court had authority to release him with supervision independently of the criteria set forth in section 229A.8A. That provision states:

> In any proceeding under section 229A.8, the court may order [a] committed person released with supervision if . . . [t]he court or jury has determined that the person should be released from a secure facility or a transitional release program, but the court has determined the person suffers from a mental abnormality and it is in the best interest of the community to order release with supervision before the committed person is discharged.

*Id.* § 229A.8A(1)(b). The district court concluded it lacked authority to exercise this option. We discern no error in the court's conclusion because a separate subsection plainly states "[a] committed person may not petition the court for release with supervision." *Id.* § 229A.9A(5).

We affirm the district court's conclusion that Mauro was ineligible for discharge or a transitional release program.

**AFFIRMED.**